**Revised August 23, 2000**

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

_____

No. 99-10316
_____


FLORENTINA CARDOSO; AURORA MORAN; ARTURO MARTINEZ

                                    Plaintiffs-Appellants,

                    VERSUS

JANET RENO, Attorney General of the United States,

                                    Defendant-Appellee.

_____

Appeal from the United States District Court
For the Northern District of Texas
_____

July 11, 2000

Before POLITZ, DAVIS, Circuit Judges, and RESTANI, Judge[1].

W. EUGENE DAVIS, Circuit Judge:

Plaintiffs-Appellants brought this action for injunctive and declaratory relief under 8 U.S.C. § 1252 and section 301 of the Immigration Act of 1990.  They seek to compel the Attorney General to adjust their immigration status, permit them to remain in the United States, and provide them with work authorization.  The

_____

[1] The Honorable Jane A. Restani, Judge, United States Court of International Trade, sitting by designation.

1

district court dismissed the action, finding that 8 U.S.C. § 1252(g) deprived it of jurisdiction to review the action. For the reasons that follow, we affirm.

## I.

Appellants, Florentina Cardoso, Arturo Martinez, and Aurora Moran are citizens of Mexico. Each Appellant illegally entered the United States but contends that they are entitled to legal permanent resident status.

Florentina Cardoso illegally entered the United States in July 1984 in order to join her husband, Cesario, who had been living in the United States since 1982. Cesario had adjusted his own status to that of temporary resident, later permanent resident, and sought to adjust the status of his family pursuant to the Immigration and Naturalization Service's ("INS") "Family Fairness Program." The Program, later superseded by Congress's "Family Unity Program," 104 Stat. 4978 (1990), provided the INS with regulations for suspending deportation proceedings and issuing temporary work authorization to the spouse and children of certain legalized aliens.

Cardoso alleges that she and her children received incorrect information about the Program and that when she went to the INS District Office to apply for an adjustment in status, the agents directed her to a Detention and Deportation agent who prepared a "record of deportable alien" for her and her children. Seven days

2

later, an Immigration Judge entered an "Order of Deportation" in absentia against Florentina and her two children, Alfredo and Lucila Cardoso.

Despite the deportation order, Florentina Cardoso again requested, and this time received, voluntary departure and employment authorization. The authorization permitted her to legally work in the United States until September 11, 1999. In late October 1996, Florentina attempted to adjust her status to that of permanent resident. The INS denied her request for adjustment of status and initiated deportation proceedings. According to Mrs. Cardoso, an Immigration Judge terminated the proceedings upon learning that the INS had granted her voluntary departure. Nevertheless, Cardoso contends that she "has reason to believe that she may be in jeopardy of being arrested and immediately deported by the INS." Cardoso bases this fear upon the fact that the INS has already arrested and deported her son, Alfredo.[2]

Arturo Martinez, along with his wife, Eva Arroyo Martinez, illegally entered the United States some time prior to 1979. In 1979, the INS apprehended Mr. Martinez and deported him to Mexico. Shortly thereafter, Mr. Martinez illegally reentered the United States, where he has resided ever since.

In 1991, Mrs. Martinez became a permanent resident and five

_____

[2] Mrs. Cardoso alleges that the INS deported Alfredo after the Dallas Police had arrested and charged him with driving an automobile with a suspended license.

years later, a naturalized citizen. Subsequently, Mrs. Martinez filed an application for adjustment of status on behalf of her husband. The INS denied the application on the ground that Martinez had been deported in 1979 and had illegally reentered the United States. Martinez contends that the INS erred in denying his application of adjustment of status because it mistakenly classified him as an unprotected alien, rather than a beneficiary of the Family Unity Program. Martinez alleges that as a result of the INS's error, he now risks immediate deportation.

Aurora Moran was born in 1975. Her father, Manuel Moran, is a lawful permanent resident. In February 1992, Moran filed for an immigrant visa pursuant to 28 U.S.C. § 1153(a)(2)(A), which allots visas to "qualified immigrants who are the spouses or children of an alien lawfully admitted for permanent residence." In 1995, prior to her twenty-first birthday, a visa became available and Moran filed for an adjustment of status to that of permanent resident. In 1998, the INS completed consideration of Ms. Moran's application, denying her adjustment of status on the ground that she was no longer an eligible child. Moran alleges that the INS erred in denying her adjustment of status and that she now risks deportation as a result.

On May 18, 1998, Plaintiffs Florentina Cardoso, Aurora Moran, and Arturo Martinez filed this cause of action, originally as a class action, alleging that the Attorney General violated a number

4

of federal immigration statutes.  Plaintiffs seek declaratory and injunctive relief requiring the Attorney General to "(a) allow them to remain in the United States, (b) issue work authorization and, when a visa is available to them (c) allow them to adjust status in the United States."

The Attorney General filed a Fed. R. Civ. P. 12(b)(6) motion to dismiss on the grounds that 8 U.S.C. § 1252(g) had deprived the court of jurisdiction, that the Plaintiffs had failed to establish valid legal grounds for their complaint, and that the Plaintiffs had failed to establish any prerequisite for class certification.  The district court, pursuant to the recommendations of the U.S. Magistrate Judge, dismissed the complaint on the grounds of lack of jurisdiction and failure to state a legally cognizable claim.  This appeal followed.

II.

We review a district court's dismissal for lack of subject matter jurisdiction <u>de</u> <u>novo</u>.  <u>John G. & Marie Stella Kennedy Mem'l Found. V. Mauro</u>, 21 F.3d 667, 670 (5th Cir. 1994).  We will not affirm the dismissal unless "it appears certain that [plaintiffs] cannot prove any set of facts in support of [their] claim that would entitle [them] to relief]."  <u>Id</u>.

In October 1996, Congress passed the Illegal Immigration Reform and Immigration Responsibility Act ("IIRIRA"), 110 Stat. 3009-546

5

(1996), substantially limiting judicial review of the Attorney General's immigration decisions. See Reno v. American-Arab Anti-Discrimination Committee, 525 U.S. 471, 486 (1999)("many provisions of the IIRIRA are aimed at protecting the Executive's discretion from the courts – indeed, that can fairly be said to be the theme of the legislation"). Section 1252(g) of the Act, which guided the district court's decision in this case, provides that:

> Except as provided in this section and notwithstanding any other provisions of law, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g)(1999). This provision became effective on April 1, 1997 and "appl[ies] without limitation to claims arising from all past, pending, or future exclusion, deportation, or removal[3] proceedings." IIRIRA § 306(c)(1), 110 Stat. 3009-625(1999).

The district court, in adopting the magistrate's report, held that the effect of 8 U.S.C. § 1252(g) "is to completely remove from all courts, jurisdiction or the ability to hear any claim arising out of the Attorney General's decision or action to commence proceedings, adjudicate immigration cases, or execute removal

---

[3] The IIRIRA changed the nomenclature of immigration orders so that orders of deportation and orders of exclusion are both now referred to as "orders of removal." See IIRIRA § 309(d)(2), 110 Stat. 3009 (1996)("Any reference in law to an order of removal shall be deemed to include a reference to an order of exclusion and deportation or an order of deportation."). We use the words "removal" and "deportation" interchangeably.

6

orders, except to the extent that judicial review of that decision or action is provided for in . . . 8 U.S.C. § 1252." The court explained that because both Cardoso and Martinez are subject to pending removal orders, section 1252(g) deprived the court of jurisdiction to adjudicate their claims. Further, the court held that the Attorney General enjoys complete discretion in the granting of benefits under the Family Unity Program, and as such, courts lack jurisdiction to review such decisions.

Appellants argue that the district court misconstrued section 1252 and committed reversible error by failing to consider the Supreme Court's recent decision in Reno v. American-Arab Anti-Discrimination Committee, 525 U.S. at 471. Appellants contend that American-Arab strictly limited the jurisdiction-stripping effect of section 1252(g), and that their claims fall outside of the section's limited reach.[4]

Although neither the magistrate judge nor district court cited American-Arab, which indeed provides the controlling interpretation of section 1252(g), this Court has long recognized that "reversal is inappropriate if the ruling of the district court can be affirmed on any grounds, regardless of whether those grounds were used by the

_____

[4] Appellants also contend that the district court and magistrate erred in characterizing their suit as a petition for habeas corpus. Although the district court did erroneously describe Plaintiffs' suit, this error was harmless. The district court found that they lacked jurisdiction, not because they believed this action to be a habeas petition, but because of the claims it presented.

7

district court." Bickford v. International Speedway Corp., 654 F.3d 1028, 1031 (5th Cir. 1981). As we will discuss, American-Arab, section 1252, and this Court's more recent jurisprudence amply support the district court's determination that it lacked jurisdiction over each of the Plaintiffs' claims.

In American-Arab, the Supreme Court held that section 1252(g) does not deprive courts of jurisdiction to review "the universe of deportation claims" but rather applies only to "three discrete actions that the Attorney General may take: her 'decision or action' to 'commence proceedings, adjudicate cases, or execute removal orders.'" 525 U.S. at 482. As the Court explained:

> There are of course many other decisions or actions that may be a part of the deportation process – such as the decisions to open an investigation, to surveil the suspected violator, to reschedule the deportation hearing, to include various provisions in the final order that is the product of the adjudication, and to refuse reconsideration of that order. It is implausible that the mention of three discrete events along the road to deportation was a shorthand way of referring to all claims arising from deportation proceedings.

Id. at 482.

Appellants contend that they are not challenging the Attorney General's decision to 'commence proceedings,' 'adjudicate cases,' or 'execute removal orders.' They characterize their claims as challenges to the Attorney General's denial of their requests for adjustment of status. Because each of Plaintiffs' claims is founded on different factual backgrounds, we will analyze each separately.

8

A. Florentina Cardoso

Regardless of how she describes her claim, Florentina Cardoso undeniably seeks to prevent the Attorney General from executing a removal order. Cardoso is currently subject to a removal order entered in absentia and seeks an adjustment in status so that she may avoid that order. Indeed, in her complaint Cardoso, like the other Plaintiffs, explains that she seeks to compel the Attorney General to "allow [her] to remain in the United States."

In Alvidres-Reyes v. Reno, 180 F.3d 199 (5th Cir. 1999), this Court declined to find jurisdiction under similar circumstances. In that case, fifty illegal aliens residing in the United States, only one of whom was currently in deportation proceedings, brought a suit for mandamus, injunctive, and declaratory relief seeking to compel the Attorney General to consider their applications for suspension of deportation under a now-repealed provision of the Immigration and Naturalization Act. Id. at 201. This Court held that section 1252(g) deprived the district court of jurisdiction to hear the case. We explained that although the plaintiffs did "not explicitly pray for the court to order the Attorney General to initiate proceedings or adjudicate their deportability," if successful, plaintiffs' suit would nevertheless "compel the Attorney General to do so in order to consider their applications for suspension of deportation." Id. at 205.

9

Similarly, if Cardoso prevails in the instant action, her suit would preclude the Attorney General from executing an outstanding removal order against her. Moreover, Cardoso and the other Plaintiffs in this action, unlike the plaintiffs in <u>Alvidres-Reyes</u>, explicitly seek to enjoin the Attorney General from removing them from the United States. Although the Supreme Court's decision in <u>American-Arab</u> narrowly construed the reach of section 1252(g), nothing in that decision permits aliens to make an end-run around the terms of the statute by simply characterizing their complaint as a challenge to a denial of adjustment of status, rather than a challenge to the execution of a removal order. <u>Cf</u>. <u>Ray v. Reno</u>, 3 F.Supp.2d 1249, 1251 (D. Utah 1998)(holding that section 1252(g) deprived the court of jurisdiction to enjoin the Attorney General from executing a removal order so that defendant could seek an adjustment of status). To permit such challenges would "lead to the deconstruction, fragmentation, and hence prolongation of removal proceedings at which the Supreme Court concluded that § 1252(g) is directed." <u>Alvidres-Reyes</u>, 180 F.3d at 205.

This is not to say that section 1252(g) insulates the Attorney General from any challenge that may prevent her from ultimately executing removal orders. As the Supreme Court noted in <u>American-Arab</u>, section 1252(g) does not prevent plaintiffs from challenging "other decisions or actions that may be a part of the deportation process - such as the decisions to open an investigation, surveil

10

the suspected violator . . ., or refuse reconsideration of a [removal] order." American-Arab, 525 U.S. at 482. Similarly, this Court has recognized that section 1252(g) does not bar courts from reviewing an alien detention order, because such an order, "while intimately related to efforts to deport, is not itself a decision to 'execute removal orders' and thus does not implicate section 1252(g)." Zadvydas v. Underdown, 185 F.3d 279, 285 (5th Cir. 1999). See also Requena-Rodriguez v. Pasquarell, 190 F.3d 299, 303-304 (5th Cir. 1999)(holding that 1252(g) does not preclude challenge to final deportation order); Paunescu v. INS, 76 F. Supp.2d 896, 899 (N.D. Ill. 1999)(holding that 1252(g) does not apply where plaintiffs' claims do not "involve any of the 'specific steps in the deportation process'"). In this case, however, Cardoso does not simply challenge the Attorney General's ability to take steps toward removal, such as opening an investigation or surveilling a suspect. Nor does Cardoso merely challenge a decision that, although intimately related to the execution of a removal order, does not implicate the actual execution of such an order. Instead, Cardoso seeks an injunction commanding the Attorney General to adjust her immigration status and precluding the Attorney General from executing pending removal orders. Section 1252(g) precludes us from considering such a claim. Cf. Sabhari v. Reno, 197 F.3d 938, 942 (8th Cir. 1999)(holding that where plaintiff's petition for adjustment of status was "separate and distinct from any matter

11

related to an order of deportation," 1252(g) did not preclude jurisdiction). As we explained in <u>Alvidres-Reyes</u>, "the Congressional aim of § 1252(g) is to protect from judicial intervention the Attorney General's long-established discretion to decide whether and when to prosecute or adjudicate removal proceedings or to execute removal orders." <u>Id</u>. at 201. Accordingly, the district court did not err in declining to exercise jurisdiction over Cardoso's complaint.

B. Arturo Martinez

Arturo Martinez illegally reentered the United States in 1979 and is therefore currently subject to summary removal. <u>See</u> 8 U.S.C. § 1231(a)(5)(1999)("If the Attorney General finds that an alien has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal, the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed, the alien is not eligible and may not apply for any relief under this chapter, and the alien shall be removed under the prior order at any time after the reentry."). Although Martinez, like Cardoso, couches his claim as a challenge to the immigration judge's denial of his adjustment of status, he admittedly seeks review of this decision in order to stave-off deportation. Indeed, like Cardoso, Moran explicitly seeks to compel the Attorney General to "allow [him] to remain in the United

12

States." Because this challenge is tantamount to a challenge to the execution of a removal order, section 1252(g) bars courts from exercising jurisdiction. Cf. Lopez-Herrera v. INS, 203 F.3d 835 (10th Cir. 2000)(unpublished disposition)(holding that 1252(g) bars review of a request for stay of deportation where removal order was based upon petitioner's illegal reentry); Zsimopoulos v. Reno, 1998 WL 437266, *1 (E.D. Pa. Jul 15, 1998)(holding that section 1252(g) bars courts from reviewing challenges to removal orders where removal order was based upon petitioner's illegal reentry because such challenges constitute "review of a decision of the Attorney General executing a removal order"); Mendez-Tapia v. Sonchik, 998 F.Supp. 1105, 1107 (D. Ariz. 1998)(same); Ayala v. Reno, 995 F.Supp. 717, 717 (W.D. Tex. 1998)(same). Accordingly, the district court did not err in finding that it lacked jurisdiction to review Martinez's claim.

C. Aurora Moran

Unlike Martinez and Cardoso, Aurora Moran has never faced a removal order. Although Moran contends that she fears deportation because the INS denied her request for an adjustment of status, she does not allege that the Attorney General has initiated removal proceedings. Moran seeks nothing more than review of the immigration judge's denial of her request for adjustment of status.

As a matter of jurisdiction, courts may not review the

13

administrative decisions of the INS unless the appellant has first exhausted "all administrative remedies." I.N.A. 242(d), 8 U.S.C. 1252(d)(1999). In this case, although Moran may not directly appeal the immigration judge's denial of her request for adjustment of status, she may, nevertheless, renew her request upon the commencement of removal proceedings. See 8 C.F.R. § 245.2(a)(5)(ii)(1999)("No appeal lies from the denial of an application by the director, but the applicant, if not an arriving alien, retains the right to renew his or her application in [removal] proceedings."); Austin T. Fragomen, Jr. et al., Immigration Procedures Handbook 13-91 (1999)("There is no direct appeal from [an adjustment of status] denial. . . . If the alien believes that the adjustment application was wrongly denied, he or she has the right to reapply for adjustment of status as a part of deportation proceedings brought against him or her by the INS. The alien has a right to appeal the denial of an adjustment application when ... made during a removal proceeding.") As such, Moran has not yet exhausted her administrative remedies and this Court may not exercise jurisdiction. Accord McBrearty v. Perryman, 2000 WL 568337, *1 (7th Cir. May 11, 2000)(holding that plaintiff had failed to exhaust remedies on adjustment of status claim where "they could obtain review of the district director's decision by the Board of Immigration Appeals if and when the immigration service institutes removal . . . proceedings against them"); Randall v. Meese, 854 F.2d

472, 482 (D.C. Cir. 1988)(declining to review denial of adjustment of status where deportation proceedings had not commenced); Chan v. Reno, 916 F.Supp. 1289, 1297-99 (S.D. N.Y. 1996)(holding that exhaustion of administrative remedies doctrine precludes plaintiffs from seeking judicial review where they have not been subjected to deportation proceedings).

## III.

For the foregoing reasons, the judgment of the district court is AFFIRMED.