# IN THE UNITED STATES COURT OF APPEALS

# FOR THE FIFTH CIRCUIT

———————

m 99-40122

———————

JULIO LOA-HERRERA, RAMIRO CANTU-GRACIA, JUANA GUZMAN-ASCENCIO,
EFRAIN MERINO, ARTURO LOZANO-LOPEZ, ALEJANDRA GUTIERREZ,
JUAN SANCHEZ-SALINAS, AND ADELITA CANTU DE CABRERA,
ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED,

Plaintiffs-Appellees,

VERSUS

E.M. TROMINSKI,
IMMIGRATION AND NATURALIZATION SERVICE DISTRICT DIRECTOR,
JANET RENO,
UNITED STATES ATTORNEY GENERAL,
AND
IMMIGRATION AND NATURALIZATION SERVICE,

Defendants-Appellants.

———————————

Appeal from the United States District Court
for the Southern District of Texas

———————————

October 31, 2000

Before SMITH and DENNIS, Circuit
Judges, and HARMON,* District Judge.

JERRY E. SMITH, Circuit Judge:

The plaintiff class is comprised of lawful permanent residents ("LPR's") faced with

———————

* District Judge of the Southern District of Texas, sitting by designation.

pending deportation or exclusion proceedings[1] in which no final order of deportation or exclusion has yet been entered, who are not presently held in detention, and whose immigration documents have been confiscated by the Harlingen, Texas, office of the Immigration and Naturalization Service ("INS"). Plaintiffs object to INS's practice of seizing an LPR's laminated Form I-151 or I-551 ("green card")[2] and other government documents and issuing, in their place, an I-94 "Temporary Evidence of Lawful Permanent Resident" form containing extraneous information announcing the holder's pending removal proceedings. They additionally claim that LPR's are entitled to notice and a hearing to determine whether they should be paroled within the United States pending a final determination in their removal proceedings.

The district court granted the plaintiffs' request for injunctive relief. Its final order, dated January 13, 1999, regulates the seizure of an LPR's green card and issuance of temporary documents pending removal proceedings, requires the INS to hold a hearing before determining whether an LPR should be paroled into the United States pending a final order of removal, and guarantees LPR's the right not to have their other lawfully issued documents confiscated unless those documents constitute *bona fide* evidence of unlawful conduct.[3]

---

[1] The Illegal Immigration Reform and Immigration Responsibility Act of 1996 ("IIRIRA") "changed the nomenclature of immigration orders so that orders of deportation and orders of exclusion are both now referred to as 'orders of removal.'" *Cardoso v. Reno*, 216 F.3d 512, 515 n.3 (5th Cir. 2000). *See also* IIRIRA § 309(d)(2), 110 Stat. 3009-546, 3009-627 (1996) (stating that "any reference in law to an order of removal shall be deemed to include a reference to an order of exclusion and deportation or an order of deportation.").

[2] *See Etuk v. Slattery*, 936 F.2d 1433, 1436 (2d Cir. 1991) ("The INS regulations provide for the issuance of either of two registration forms to LPRsSSthe Form I-151 or Form I-551. Form I-151 registration cards were issued to LPR's before June 1987. Since then, LPR's have been issued the I-551 form. Both of these forms provide LPR's with proof of their alien registration and legal status. The documents are popularly referred to as 'green cards.'").

---

[3] The order states:

1. Pursuant to the intent of the McNary Memorandum, Defendants shall only confiscate the laminated Form I-151 or I-551 of a non-arriving lawful permanent resident placed under expulsion proceedings, and not held in custody, when the INS District Director, chief patrol agent, or officer in charge determines that a temporary document is needed for a justifiable, particularized reason, based on the individual facts of the case. When such a resident's green card is confiscated, Defendants shall provide temporary evidence of lawful permanent resident status, which shall be prepared in accordance with Operation Instruction 264.2, and shall be issued for at least six months, and shall contain a notation that it is renewable.

2. When a permanent resident applying for admission to the U.S. is placed under expulsion proceedings, Defendants may confiscate the resident's green card, but shall afford said person a prompt hearing before an Immigration Judge, in accordance with 8 C.F.R. § 236.1, to determine whether he or she should be paroled into the U.S. during the pendency of said proceedings, and if so, under what conditions. If the person is so paroled, and not held in cus-

(continued...)

The government presents a series of procedural and substantive objections to the order. With respect to the seizure of green cards and issuance of temporary documents, we conclude that the order was too sweeping in light of 8 C.F.R. § 264.5(g), which is cited by neither party nor the district court. In addition, we conclude that federal courts have no jurisdiction to review parole decisions of the Attorney General. Finally, we decide that remand is appropriate to ensure that the government has ample opportunity to press its factual and legal contentions before the district court.

We therefore vacate the order and remand for any further proceedings that may be required. We also vacate an earlier, preliminary order benefiting an individual who is not a member of the plaintiff class.

I.

The government claims the plaintiffs lack standing.[4] "[T]he critical standing question is whether the plaintiff has demonstrated a personal, distinct, and palpable injury-in-fact that is fairly traceable to the defendant's allegedly unlawful conduct, and that such an injury is likely to be redressed by a favorable judicial decision." *National Treasury Employees Union v. United States Dep't of Treasury*, 25 F.3d 237, 241 (5th Cir. 1994). In identifying an injury that confers standing, courts look exclusively to the time of filing. *See Pederson v. Louisiana State Univ.*, 213 F.3d 858, 870 (5th Cir. 2000).

We reject the government's contention that the plaintiffs lack standing, for want of injury, to challenge their denial of immigration documentation. Green cards "play a significant role in the day-to-day lives of LPRs."[5] And although the I-94 forms issued in place of the green cards do evidence LPR status, they additionally state:

> WarningSSA nonimmigrant who accepts unauthorized employment is subject to deportation.
>
> ImportantSSRetain this permit in your possession; you must surrender it when you leave the U.S. Failure to do so may delay your entry into the U.S. in the future.
>
> You are authorized to stay in the U.S.

---

[3](...continued)
tody, Defendants shall provide a substitute document evidencing permanent resident status, and entitlement to be employed in the U.S.; and

3. Defendants shall not confiscate any other lawfully issued documents from permanent residents, absent a good faith belief that such documents constitute *bona fide* evidence of unlawful conduct.

[4] Although it seeks reversal of the entirety of the district court's order on standing grounds, the INS presents argument only with respect to an LPR's right to hold a green card or other evidence of immigration status. Because the plaintiffs adequately allege injury in the balance of their com-(continued...)

[4](...continued)
plaint, we limit our analysis accordingly.

[5] *Etuk*, 936 F.2d at 1437 (". . . Congress increased the importance of the green card with its adoption of the Immigration Reform and Control Act of 1986 . . . in order to establish one's eligibility for a variety of government funded assistance programs . . . [and in the area of] employment authorization.").

3

only until the date written on this form. To remain past this date, without permission from immigration authorities, is a violation of the law.

As plaintiffs adequately allege, inadequate immigration documents result in a greater degree of harassment by the INS and diminished employment opportunities. Indeed, the government admits that aliens who hold only temporary I-94 forms are "more likely to be more closely inspected" than are holders of green cards. Although the government argues that plaintiffs fail to identify a single LPR who has *actually* suffered such injury, actual injury is not constitutionally required.

Mere threatened injury is sufficient,[6] and the threat in this case is real. For example, according to the plaintiffs, "[a]s a result of INS' arbitrary confiscation of his I-551, Loa [a former plaintiff, now deceased] endured almost two hours of detention at the border, and an unreasonable search, causing 'inconvenience, and public humiliation.'" Plaintiffs therefore have asserted sufficient injury to con-

fer standing.

More troubling is the government's contention that the district court failed to give the government an opportunity to present argument before issuing its order. Because of our rulings on the government's substantive claims, which we discuss below, we do not address these allegations. Instead, we vacate the order and remand for further proceedings, during which the INS assuredly will have ample opportunity to press any additional legal or factual arguments it wishes to make and thereby to cure any procedural defects regarding the order.

II.

The government's substantive objections to the order regard the issuance and confiscation of immigration documents. LPR's are authorized to work in the United States.[7] Even "LPRs who are placed in deportation proceedings do not lose the status of lawful residents and its attendant benefits until . . . a final deportation order [has been] issued." *Etuk*, 936 F.3d at 1447. Until deported or excluded, LPR's are fully entitled to remain in the United States and seek employment, for "[t]he fact that an alien is subject to deportation proceedings does not affect his status as a permanent resident alien. A permanent resident alien's status terminates only when the order of deportation is affirmed by the BIA or otherwise becomes administratively final." *Molina v. Sewell*, 983 F.2d 676, 680 (5th Cir. 1993).

In addition, federal law guarantees LPR's certain rights of documentation they can use to prove, to potential employers and others, their right to be in the United States. How that right is protected in practice, however, is

---

[6] *See City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983) ("Lyons' standing to seek the injunction requested depended on whether he was likely to suffer future injury from the use of the chokeholds by police officers."); *Friends of the Earth, Inc. v. Crown Cent. Petroleum*, 95 F.3d 358, 360 (5th Cir. 1996); *Hernandez v. Cremer*, 913 F.2d 230, 234 (5th Cir. 1990) ("Although at present Hernandez is safely inside the United States, he is . . . entitled to travel to and from Mexico without deprivation of his Fifth Amendment due process rights. We think there is at the very least a reasonable expectation that Hernandez will exercise his right to travel. Indeed, Hernandez testified that he would like to return to Mexico, but did not 'want to run the risk of something like this happening again.'") (citation omitted).

[7] *See* 8 U.S.C. § 1324a(a)(1)(A), (h)(3).

4

within the express discretion of the Attorney General.[8]

In granting the plaintiffs injunctive relief on the question of LPR documentation, the district court relied substantially on a 1990 internal INS policy clarification (the "McNary Memorandum"),[9] which directed the INS not to seize green cards absent individualized circumstances and must "be followed until appropriate regulations and operations instructions are published." The district court erred in relying on the McNary Memorandum, for an agency's internal personnel guidelines "neither confer upon [plaintiffs] substantive rights nor provide procedures upon which [they] may rely." *Fano v. O"Neill*, 806 F.2d 1262, 1264 (5th Cir. 1987). The memorandum merely articulates internal guidelines for INS personnel; it does not establish judicially enforceable rights.

---

[8] *See* 8 U.S.C. § 1304(d) ("Every alien in the United States who has been registered and fingerprinted under the provisions of the Alien Registration Act, 1940, or under the provisions of this chapter shall be issued a certificate of alien registration or an alien registration receipt card in such form and manner and at such time as shall be prescribed under regulations issued by the Attorney General."); *Etuk*, 936 F.2d at 1444 ("The INA mandates that the Attorney General provide LPRs who register with proof of their legal status."). *See also* 8 C.F.R. § 264.1 (listing forms).

[9] The McNary Memorandum states:

Litigation over the disposition of Forms I-151 and I-551 once the holders have been placed in deportation . . . proceedings has revealed a need for clarification of Service policy in this area. The instructions contained in this memorandum are effective upon receipt, and will be followed until appropriate regulations and operations instructions are published.

DEPORTATION PROCEEDINGS

A lawful permanent resident alien in deportation proceedings is required to be registered under section 261 or 262 of the Immigration and Nationality Act, as amended, and to be in possession of evidence of such registration. Form I-151 or I-551 [green card] is the appropriate evidence of alien registration for lawful permanent residents

(continued...)

[9](...continued)
in the United States. Accordingly, when an order to show cause is issued, and the recipient is the holder of Form I-151 or I-551 and is not detained or incarcerated, he or she shall be allowed to retain possession of evidence of alien registration. If the alien has no evidence of alien registration, Form I-90 shall be filed and processed, and the appropriate documentation will be issued by the office having jurisdiction.

. . . If the district director, chief patrol agent or officer in charge determines that a temporary document is needed to assure the alien's appearance at hearings, or for other justifiable reasons, the [green card] will be lifted, and a temporary I-551 issued. In these cases, temporary Forms I-551 will be prepared in accordance with the guidance in O.I. 264.1, and will be issued for a period sufficient to allow completion of the deportation proceedings, but in no case less than six months.

McNary Memorandum, Memorandum from Office of Commissioner to All District Directors (Mar. 14, 1990).

*Etuk*, 936 F.2d at 1442.

Inexplicably, neither the district court nor any of the parties cite 8 C.F.R. § 264.5(g) (2000), which states in its entirety:

> A person in exclusion proceedings shall be entitled to evidence of permanent resident status until ordered excluded. Such evidence shall be in the form of a temporary Form I-551 issued for a period sufficient to accomplish the exclusion proceedings. A person in deportation proceedings shall be entitled to evidence of permanent resident status until ordered deported or excluded. Issuance of an Permanent Resident Card to a person in exclusion or deportation proceedings, provided the person had status as a lawful permanent resident when the proceeding commenced, shall not affect those proceedings.

Because the district court erred to the extent that its order relied on the McNary Memorandum, we vacate the order and remand so the court can determine whether an injunction is appropriate in light of § 264.5(g). In doing so, we make a number of observations regarding the scope and meaning of that regulation.

Section 264.5(g) requires that the INS issue the temporary Form I-551 to persons in exclusion proceedings.[10] By contrast, the regulation does not specify the form of documentation with respect to those in deportation proceedings.

In addition, § 264.5(g) requires only that the INS provide documentary evidence of LPR status. The regulation plainly does *not* restrict the INS from attaching *additional notations* to caution employers that a potential worker, although an LPR and therefore *currently* authorized to work in the United States, is also facing pending deportation proceedings and thus may not be available for an extended period of employment.

The Attorney General is free to issue new regulations and amend the requirements of § 264.5(g) (provided, of course, that the requisite procedure is followed). Absent any legal authority to the contrary, however, the district court may not interfere with the Attorney General's statutory discretion to balance an LPR's interest in possessing particular forms of documentation against an employer's interest in knowing a potential employee's present and future immigration status.

### III.

The government also challenges the portion of the order respecting the Attorney General's discretion to grant parole within the United States. The Attorney General is vested with broad powers over the custody of all aliens (including LPR's) against whom deportation or exclusion proceedings are pending.[11] "[I]n

---

[10] We reject the government's contention that the requirement of evidence "*in the form of* a temporary Form I-551" is satisfied by the issuance of any form that is similar to a Form I-551, for that is not the most reasonable construction of the regulation. Instead, under the plain meaning of § 264.5(g), the INS must issue the temporary Form I-551 to persons in exclusion proceedings; substitute forms are not sufficient.

[11] An "alien" is "any person not a citizen or national of the United States." 8 U.S.C. § 1101-(a)(3). The term thus includes LPR's. *See also* 8 U.S.C. § 1101(a)(20) ("The term 'lawfully admitted for permanent residence' means the status of having been lawfully accorded the privilege of residing permanently in the United States as an im-
(continued...)

the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A). Where such an alien "is arriving on land (whether or not at a designated port of arrival) from a foreign territory contiguous to the United States, the Attorney General may return the alien to that territory pending a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(C).

Alternatively, instead of paroling the individual out of the United States,

> [o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States . . . . [P]ending such decision, the Attorney GeneralSS
>
> (1) may continue to detain the arrested alien; and
>
> (2) may release the alien onSS
>
> (A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or
>
> (B) conditional parole.

8 U.S.C. § 1226(a).[12]

The plaintiffs argue that, pursuant to *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976), due process requires the INS to provide an LPR with notice of his right to parole within the United States[13] and with a parole hearing before the Attorney General decides how to exercise her discretion. Congress, however, has denied the district court jurisdiction to adjudicate deprivations of the plaintiffs' statutory and constitutional rights to parole.[14]

---

[12] *See also* 8 U.S.C. § 1182(d)(5)(A) ("The Attorney General may . . . in his discretion parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States, but such parole of such alien shall not be regarded as an admission of the alien and when the purposes of such parole shall, in the opinion of the Attorney General, have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States."); 8 C.F.R. § 212.5; 8 C.F.R. § 235.3(c)-(d).

[13] *But see City of West Covina v. Perkins*, 525 U.S. 234, 240-41 (1999) ("A primary purpose of the notice required by the Due Process Clause is to ensure that the opportunity for a hearing is meaningful . . . . No similar rationale justifies requiring individualized notice of state-law remedies which . . . are established by published, generally available state statutes and case law. Once the property owner is informed that his property has been seized, he can turn to these public sources to learn about the remedial procedures available to him. The City need not take other steps to inform him of his options.").

[14] *See Lopez-Elias v. Reno*, 209 F.3d 788, 793 (continued...)

---

[11](...continued)
migrant in accordance with the immigration laws, such status not having changed.").

The plaintiffs respond that the Attorney General's parole authority at issue in this case is found not in 8 U.S.C. § 1226, but instead in 8 U.S.C. § 1225(b)(2)(C). Therefore, they argue, the bar on judicial review contained in § 1226(e), which applies only to "this section," does not bar this suit. But § 1225(b)(2)(C) only authorizes the Attorney General to return an applicant for admission to Mexico pending the exclusion proceedings. It is § 1226(a), by contrast, that authorizes her to grant parole within the United States to an LPR subject to removal proceedings.

In sum, "[t]he Attorney General's discretionary judgment regarding the application of" paroleSSincluding the *manner* in which that discretionary judgment is exercised, and whether the procedural apparatus supplied satisfies regulatory, statutory, and constitutional constraintsSSis "not . . . subject to review." § 1226(e). Without reaching the merits of the plaintiffs' constitutional claims, we therefore vacate those portions of the order that require the INS to hold parole hearings. In doing so, we note that the executive branch, of course, has an independent duty to uphold the Constitution, irrespective of whether its actions are subject to judicial review.[15]

IV.

Before the subject order was entered, the district court granted preliminary relief to Jesus Garza-Pacheco. On appeal, the government asserts that the court had no authority to grant any relief whatsoever to him, because he is neither a named plaintiff nor a member of the plaintiff class.

We quickly dispense with the plaintiffs' assertion that this court has no appellate jurisdiction to review the Garza-Pacheco order. Appellants have the "choice of appealing from [a preliminary] order within fifteen days or of awaiting a final decree, for all interlocutory orders are reviewable on appeal from the final decree." *Gloria Steamship Co. v. Smith*, 376 F.2d 46, 47 (5th Cir. 1967) (citations omitted). And although the government's notice of appeal designates only the January 13, 1999, order, a "notice of appeal to this Court from the final decree of the District Court invoked the jurisdiction of this Court to examine the interlocutory order as well as the final decree." *Id.*

We also agree with the government's argument on the merits. The plaintiff class is restricted to LPR's "who are under deportation or exclusion proceedings, in whose cases no final order of deportation or exclusion has been

---

[14](...continued)
(5th Cir. 2000) ("Federal courts derive their power to adjudicate from Congress, and not from the Constitution alone."), *petition for cert. filed*, 69 U.S.L.W. 3128 (July 28, 2000) (No. 00-164); 8 U.S.C. § 1226(e) ("The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole.").

[15] *See* U.S. CONST. art. VI, cl. 3 ("all executive . . . Officers . . . shall be bound by Oath or Affirmation, to support this Constitution"); David P. Currie, THE CONSTITUTION IN CONGRESS: THE FEDERALIST PERIOD 1789-1801 at ix-x (Chicago 1997) ("Members of Congress and executive officers, no less than judges, swear to uphold the Constitution, and they interpret it every day in making and applying the law. . . . [B]oth Congress and the Executive have a great deal to tell us about the Constitution.").

entered." Garza-Pacheco therefore was not a valid member of the class, because a final order of deportation has been executed against him. "In the complaint the title of the action shall include the names of all the parties." FED. R. CIV. P. 10(a). Failure to name a party denies a court jurisdiction over that party.[16]

We therefore VACATE the final order of January 13, 1999, and the preliminary order regarding Garza-Pacheco, and we REMAND for any further necessary proceedings.

ENDRECORD

---

[16] *See National Commodity & Barter Ass'n v. Gibbs*, 886 F.2d 1240, 1245 (10th Cir. 1989) (holding that "the federal courts lack jurisdiction over the unnamed parties, as a case has not been commenced with respect to them").

DENNIS, Circuit Judge, concurring in part and dissenting in part.

I concur in vacating the final order of January 13, 1999 and the preliminary order regarding Garza-Pacheco, and I agree in part with the reasoning of the majority opinion. I disagree, however, with part of the reasons assigned by the majority and with the limits it imposes upon further proceedings in the district court. I concur in the following parts of the majority opinion: (1) Part I holding that the plaintiffs have standing; (2) Part II insofar as it recognizes that LPRs are authorized to seek employment and work in the United States; that a person's LPR status, including its attendant benefits such as the right to work and to have documentation certifying that right and the right to be in the United States, does not terminate until an order of deportation is affirmed by the Board of Immigration Appeals (BIA) or otherwise becomes administratively final; and that the district court erroneously relied upon the McNary Memorandum as establishing judicially enforceable rights; and (3) Part IV with respect to this court's appellate jurisdiction to review the Garza-Pacheco order.

I respectfully disagree with the majority opinion in the limits it places on the remand instructions and in the following respects:

1.

An alien who is a lawful permanent resident of the United States, and remains physically present here, is a person within the protection of the Fifth Amendment who may not be deprived of his life, liberty, or property without due process of law. United States v. Verdugo-Urquidez, 494 U.S. 259, 271 (1990); Landon v. Plasencia, 459 U.S. 21, 32-34 (1982); Kwong Hai Chew v. Colding, 344 U.S. 590, 596 (1953); Wong Wing v. United States, 163 U.S. 228, 238 (1896). Accordingly, he may not be deported without notice, a hearing, and an opportunity to be heard, before such determination is

made. <u>Chew</u>, 344 U.S. at 597-98. Likewise, because LPRs in exclusion proceedings must also be accorded procedural due process, <u>Landon</u>, 459 U.S. 33-37, the same constitutional protections extend to resident aliens seeking reentry after a brief trip abroad not meaningfully interruptive of the alien's continued United States residence. <u>Zadvydas v. Underdown</u>, 185 F.3d 279, 295 & n.17 (5th Cir. 1999) (citing <u>Landon</u>, 459 U.S. at 32-24); <u>see also</u> <u>Verdugo-Urquidez</u>, 494 U.S. 259, 271 (1990)(citing cases recognizing various constitutional rights of resident aliens: e.g., <u>Bridges v. Wixon</u>, 326 U.S. 135, 148 (1945)(resident aliens have First Amendment rights); <u>Wong Wing</u>, 163 U.S. at 238 (resident aliens entitled to Fifth and Sixth Amendment rights); <u>Yick Wo v. Hopkins</u>, 118 U.S. 356, 369 (1886)(Fourteenth Amendment protects resident aliens)). Although an LPR may later be found excludable or deportable, he is, nonetheless, entitled to due process before such determination is made. <u>Chew</u>, 344 U.S. at 597-98. "Although Congress may prescribe conditions for his expulsion and deportation, not even Congress may expel him without notice and a fair opportunity to be heard." <u>Id.</u>

Consequently, an alien's LPR status includes elements of liberty and property rights of which he cannot be deprived without due process of law. For example, the right to seek and engage in employment, to travel, and t o qualify for other benefits and entitlements are attributes or inherent characteristics of LPR status. Therefore, the government cannot deprive an LPR of these rights or entitlements or significantly damage them without first affording the LPR due process of law guaranteed by the Fifth Amendment. For instance, the INS and other government agents may not, without affording an LPR such due process of law, (1) confiscate his green card without providing him a reasonably adequate substitute document that will afford him equal access to all attributes of LPR status or (2) deny an LPR readmission. Of course, an LPR can be investigated, arrested, o r

11

prosecuted for a crime just as any other alien or citizen. But an LPR cannot be deprived of any of the attendant rights of his status without due process of law, because the Due Process clause of Fifth Amendment does not acknowledge any distinction between citizens and resident aliens. See Galvan v. Press, 347 U.S. 522 (1954) ("[Because] an alien who legally became part of the American community ... is a 'person,' [he] has the same protection for his life, liberty and property under the Due Process Clause as is afforded to a citizen."); Bridges, 326 U.S. at 161 (Murphy, J., concurring) ("None of these provisions acknowledges any distinction between citizens and resident aliens.").

2.

Accordingly, I do not agree that an LPR's right to adequate documentation to verify his right to work and remain in the country is totally within the express discretion of the Attorney General. Although the Attorney General may prescribe reasonable regulations for administrative purposes, not even the Attorney General may deprive an LPR of his rights or entitlements protected by the Fifth Amendment without affording him due process. Similarly, although the INS may enjoy some discretion in providing documentary evidence of LPR status, it may not do so in a way that deprives or damages an LPR's status and its attendant rights and entitlements without complying with the requirements of the Fifth Amendment. Thus, although the courts may not have jurisdiction to review the exercise of discretion in matters of parole and documentation by the Attorney General or the INS, the courts most assuredly do have the power and duty to hear cases under the Constitution involving the alleged deprivation of life, liberty, or property of a resident alien without due process of law. See, e.g., Johnson v. Robison, 415 U.S. 361, 374 (1974) (holding that provisions of the Veterans' Readjustment Act, while precluding judicial review of administrative decisions, did "not extend the prohibitions of that section to actions challenging the constitutionality of laws"); Parra v. Perryman,

172 F.3d 954, 957 (7th Cir. 1999) (recognizing that although a court may not be able to review a decision implementing 1226, 1226(e) does *not* purport to foreclose challenges" to 1226 itself"). Moreover, I do not read any of the statutes or regulations as being in conflict with these constitutional principles. Consequently, I would remand the case for further proceedings in accordance with the requirements of the Fifth Amendment, applying the laws and regulations consistently with the constitutional framework.

3.

Finally, I dissent from the limitations that the majority places upon further proceedings and relief with respect to Garza-Pacheco. From the available information, it is unclear that Garza-Pacheco should be excluded from the class. The Appellants contend that Garza-Pacheco's case is not sufficiently related for him to be a member of the class because Garza-Pacheco was not an LPR at the time the District Court granted him preliminary relief.

But, it is not clear that he was given notice and an opportunity to be heard before his green card was confiscated and before he was initially ordered deported or that his second deportation was administratively final at the time the district court granted him preliminary relief. Consequently, Garza-Pacheco's case should be remanded to the district court for further proceedings and resolution of these issues.

Accordingly, I would vacate the district court's orders and remand the case for further proceedings consistent with the foregoing reasons.