# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

April 4, 2023

Lyle W. Cayce
Clerk

———————

No. 22-20344

———————

Doctor Fathi Elltaif Saad Elldakli;
Naglla Kouni Salem Ghadar; Hadil Fathi El Elldakli;
Ranim Fathi El Elldakli; Taha Fathi El Elldakli,

*Plaintiffs—Appellants*,

*versus*

Merrick B. Garland;
Department of Homeland Security;
Director Alejandro N. Mayorkas; USCIS; Ur M. Jaddou;
John Allen; Wallace L. Carroll;
United States of America,

*Defendants—Appellees*.

———————————————————————

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:21-CV-3320

———————————————————————

Before Higginbotham, Smith, and Engelhardt, *Circuit Judges*.
Jerry E. Smith, *Circuit Judge*:

Plaintiffs ask whether 8 U.S.C. § 1252 strips the federal courts of jurisdiction to review certain status-adjustment decisions by United States Citizenship and Immigration Services ("USCIS"). But the parties overlook whether the federal courts have subject-matter jurisdiction to review status-

No. 22-20344

adjustment decisions by the USCIS in the first place, despite the jurisdiction-stripping statute.

We hold that status-adjustment decisions made by the USCIS outside the context of removal proceedings are not final agency actions reviewable under the Administrative Procedure Act ("APA"), nor are they final removal actions reviewable per the Immigration and Nationality Act ("INA"). We thus affirm the district court's order of dismissal for want of jurisdiction.

## I.

Fathi Elltaif Saad Elldakli ("Elldakli"), his wife, and his three children are Libyan citizens who have resided lawfully in the United States for over a decade. All family members have been permanent residents for three and a half years. In 2017, Elldakli filed an I-140 petition, seeking a waiver of the labor-certification requirement of his visa because he is a "professional holding an advanced degree whose work is in the national interest of the United States." While the petition was pending, Elldakli and his family filed I-485 applications for status adjustment to legal permanent residents ("LPRs") under 8 U.S.C. § 1255(a).[1]

Section 1255 grants the Attorney General the discretion to adjust the status of certain aliens to LPR status if they have met certain statutorily specified conditions. One of those conditions is that the alien is a beneficiary of an approved immigrant visa petition—here, Elldakli's pending I-140 petition. *See* § 1255(i)(1)(B); 8 C.F.R. §§ 245.2(a)(2)(i) and (a)(5)(ii).

But the USCIS granted the family's I-485 petitions prematurely, before determining whether to grant Elldakli his I-140 petition. And six months later, the USCIS denied the I-140 petition. Elldakli appealed the

---

[1] These applications are colloquially referred to as green cards.

denial on its merits to the USCIS Administrative Appeals Office ("AAO"). While that appeal was pending, the USCIS issued a Notice of Intent to Rescind the family's green cards, stating that the initial grant had been in error because the family had yet to become beneficiaries of an approved immigrant-visa petition. The AAO then affirmed the USCIS's I-140 denial and dismissed Elldakli's appeal.

The Elldakli family filed the instant complaint, asking the district court to issue a temporary restraining order to keep USCIS from rescinding the green cards and to reopen the I-485 applications. Asserting subject matter jurisdiction under the APA, 5 U.S.C. § 701 *et seq.*, the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, and 28 U.S.C. § 1331, plaintiffs contended first that it was arbitrary and capricious for the USCIS to deny the original I-140 petition, and second, that it was arbitrary and capricious for the USCIS initially to have granted the I-485 applications when plaintiffs had not met the eligibility requirements (because the I-140 petition had not been granted).[2]

The district court found that it had no subject matter jurisdiction to review the original denial of the I-140 because plaintiffs had not exhausted their administrative remedies. The court then concluded that 8 U.S.C. § 1252(a)(2)(B)(i) precludes federal jurisdiction over discretionary agency decisions granting relief under 8 U.S.C. § 1255. The court thus dismissed both of plaintiffs' claims for lack of subject matter jurisdiction.

Plaintiffs have timely appealed.

---

[2] Plaintiffs' injuries are based on their allegation that the penalties they may experience if their green cards are rescinded are more severe than had they never been granted the green cards.

No. 22-20344

## II.

The only issue on appeal is whether the district court erred in dismissing the claim to review USCIS's decision to deny Elldakli's I-140 petition for want of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). We review such orders *de novo*. *McDonnel Grp., L.L.C. v. Great Lakes Ins. SE*, 923 F.3d 427, 430 (5th Cir. 2019). "This court has a continuing obligation to assure itself of its own jurisdiction, sua sponte if necessary." *Green Valley Special Util. Dist. v. City of Schertz*, 969 F.3d 460, 468 (5th Cir. 2020) (en banc) (quoting *United States v. Pedroza-Rocha*, 933 F.3d 490, 493 (5th Cir. 2019) (per curiam)).

## III.

Plaintiffs contend the district court erred in holding that "[a]ny judgment regarding the granting of relief under Section 1255, which provides the statutory authority for I-485 applications, is in the category of discretionary decisions that no court has jurisdiction to review." Plaintiffs asserted federal subject-matter jurisdiction under the APA, the Declaratory Judgment Act, and federal question jurisdiction. The Declaratory Judgment Act is not an independent basis for subject matter jurisdiction. *In re B-727 Aircraft Serial No. 21010*, 272 F.3d 264, 270 (5th Cir. 2001). And § 1331 alone does not provide jurisdiction for agency actions unless a statute, such as the APA, has waived sovereign immunity.[3] Jurisdiction therefore hinges on the APA.

The APA allows federal courts to review an agency action that is "made reviewable by statute" or is a "final agency action for which there is

_____

[3] *See Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 n.13 (5th Cir. 1998) (citations omitted) ("[T]he APA does not create an independent grant of jurisdiction to bring suit . . . . [If] the APA creates a cause of action . . . jurisdiction exists under the general federal question statute, not the APA . . . . The APA then serves as the waiver of sovereign immunity that allows a private party to sue the government").

No. 22-20344

no other adequate remedy in court." 5 U.S.C. § 704. Agency action is not subject to judicial review where the relevant statute precludes such review or the action is committed to agency discretion by law. 5 U.S.C. § 701(a)(1)–(2). The relevant statute here is the INA, which provides that "a court may review a final order of removal only if [among other requirements] the alien has exhausted all administrative remedies available to the alien as of right." 8 U.S.C. § 1252(d). These two statutes provide a similar restriction: The federal courts have federal jurisdiction only over final agency actions for which there is no other remedy. The INA has additional jurisdictional limitations derived from § 1252, but those further restrictions require a final agency action. And here, there is no final agency action at all.

"As a matter of jurisdiction, courts may not review the administrative decisions of the INA unless the appellant has first exhausted 'all administrative remedies.'"[4] Status-adjustment decisions by the USCIS are not final removal actions under the INA because aliens may renew status-adjustment requests upon commencement of removal proceedings.[5]

No published decision has yet announced whether a USCIS status-adjustment decision is a final agency action such that the APA might grant jurisdiction despite the INA's limitation of jurisdiction to removal actions. Still, a wealth of unpublished and district court decisions have held it does not because there is another avenue for appeal.[6] *See* 8 C.F.R. § 245.2-

_____

[4] *Cardoso v. Reno*, 216 F.3d 512, 518 (5th Cir. 2000) (citing 8 U.S.C. § 1252(d) (1999)); *see also Velasquez v. Nielsen,* 754 F. App'x 256, 260–61 (5th Cir. 2018).

[5] *Cardoso*, 216 F.3d at 518; *Petrenko-Gunter v. Upchurch*, No. 05-11249, 2006 WL 2852359, at *1 (5th Cir. Oct. 2, 2006); *Maringo v. Mukasey*, 281 F. App'x 365, 367–68 (5th Cir. 2008); *see also* 8 C.F.R. § 245.2(a)(5)(ii)(stating that "[n]o appeal lies from the denial of an application by the director, but the applicant, if not an arriving alien, retains the right to renew his or her application in [removal] proceedings").

[6] *See, e.g., Robledo v. Mayorkas,* 2022 WL 2824647, at *3 (M.D. La. July 19, 2022);

No. 22-20344

(a)(5)(ii).

We now adopt that reasoning: This court does not have subject matter jurisdiction to review a status-adjustment decision by the USCIS under either the APA or the INA because the alien retains the right to *de novo* review of that decision in his final removal proceedings.[7] Thus, he "has not yet exhausted [his] administrative remedies and this Court may not exercise jurisdiction." *Cardoso*, 216 F.3d at 518.

Finding no jurisdiction over plaintiffs' claims, we go no further. The order of dismissal is AFFIRMED.

---

*Nama v. USCIS,* 2022 WL 1189889, at *3–*5 (N.D. Tex. Apr. 21, 2022)*; Garcia v. USCIS*, 2022 WL 3349151, at *6 (N.D. Tex. Aug. 12, 2022); *Puente v. Renaud,* 2021 WL 5326461, at *2–*6 (N.D. Tex. Nov. 15, 2021); *Cavena v. Renaud,* 2021 WL 2716432, at *3 (N.D. Tex. June 30, 2021); *Hernandez v. Garland,* 2021 WL 3810963, at *3 (S.D. Tex. May 19, 2021); *Mendoza v. Wolf,* 2020 WL 7123166, at *3–*4 (S.D. Tex. Dec. 4, 2020); *Avalos-Lopez v. Wolf,* 2020 WL 13556671, at *4–*5 (W.D. Tex. May 14, 2020); *Koesoemadinata v. McAleenan,* 2019 WL 4418223, at *3–*4 (S.D. Tex. Sept. 16, 2019); *Rico v. Medina,* 2017 WL 7371193, *1–*2 (S.D. Tex. Feb. 1, 2017); *Judhani v. Holder*, 2011 WL 1252661, at *5 (N.D. Tex. Mar. 9, 2011); *Hinojosa v. U.S. Dep't of Just.*, 2010 WL 5419046, at *4 (S.D. Tex. Dec. 23, 2010); *Chavira v. Upchurch*, 2006 WL 2471545, at *3 (E.D. Tex. Aug. 29, 2007); *del Castillo v. Dep't of Homeland Sec.*, 2005 WL 2121550, at *3 (S.D. Tex. Aug. 30, 2005); *Akpojiyovwi v. Acosta*, 2005 WL 1668133, at *2–*3 (S.D. Tex. July 15, 2005).

[7] This decision does not apply to situations in which the alien does not retain that right. For example, if the alien has been granted TPS, a denied-status adjustment decision might result in immediate removability, given that the alien must reopen his removal proceedings. Such a situation is distinct from this case, where plaintiffs retain the right to a full removal proceeding and the chance for *de novo* review of the status-adjustment decision. *See, e.g., Melendez v. McAleenan*, 928 F.3d 425, 429 (5th Cir. 2019).

No. 22-20344

Patrick E. Higginbotham, *Circuit Judge*, concurring in the judgment:

I concur in the judgment because I read this court's precedent in *Cardoso v. Reno*[1] to control the issue. The *Cardoso* court determined that because an applicant for adjustment of status can "renew her request upon the commencement of removal proceedings," this court may not exercise jurisdiction to review the decision before those proceedings conclude.[2] But that part of *Cardoso* was a misstep, as removal proceedings do not properly function as an administrative appeal given that most noncitizens who enter this country on nonimmigrant visas follow the law and do not prompt the government to charge them with removability. What's more, the majority opinion cements disagreement among our sister circuits regarding this exhaustion requirement. Because the record does not indicate that removal proceedings are pending in Elldakli's case, USCIS's denial of his adjustment of status is final action, and nothing in the APA should bar this court's review. This court should instead grapple with the parties' arguments on the scope of the INA's jurisdiction stripping provisions, which remains a contested question of law.

## I.

Elldakli entered the country on an F-1 student visa, with his family joining on F-2 dependent visas. Elldakli then applied for USCIS to adjust his status to an EB-2 immigrant visa based on specialized knowledge related to the oil industry. The government all but admits that USCIS committed error in this process by granting Elldakli's I-485 petition while his I-140 petition was still pending. Elldakli appeals hoping to reverse the agency's mistake, but

_____

[1] 216 F.3d 512, 518 (2000).

[2] *Id.* at 518.

the panel determines that it lacks jurisdiction because Elldakli can raise the issue in removal proceedings.[3] That is puzzling because neither Elldakli nor the government anticipate removal proceedings in this case.

The majority's reasoning is based on a misunderstanding of this country's immigration system. Only a small proportion of the tens of millions of individuals who enter this country every year on nonimmigrant visas are removed.[4] Many nonimmigrants can apply for adjustment of status, and it stands to reason that most of them depart the country lawfully if the government denies their applications. To receive additional review under this court's rationale, nonimmigrants like Elldakli would need to become removable by, for example, overstaying their visas.[5] The government must then decide to charge them as removable,[6] and the noncitizens would need to forego voluntary departure and face a potential ten-year bar on re-admission to the United States.[7] Furthermore, the government has complete control

---

[3] It is not immediately clear that Elldakli's complaint is even cognizable in removal proceedings. In almost all cases, noncitizens charged with removability challenge *denial* of status adjustment. Here, Elldakli challenges erroneous *approval* of his status adjustment, where USCIS corrected the mistake by rescinding his adjustment of status.

[4] Using pre-pandemic numbers, the United States admitted approximately 60 million nonimmigrants (excluding Visa Waiver Program participants) in 2019. Department of Homeland Security, U.S. Nonimmigrant Admissions: 2021 at 3, at https://www.dhs.gov/sites/default/files/2022-07/2022_0722_plcy_nonimmigrant_fy2021.pdf. In that year, the government removed 360,000 noncitizens. Department of Homeland Security, 2019 Yearbook of Immigration Statistics Table 39, at https://www.dhs.gov/immigration-statistics/yearbook/2019/table39.

[5] *See* 8 U.S.C. § 1227(a)(1) (rendering noncitizens removable for violating status).

[6] *See id.* § 1229a(a)(2) (charges in removability proceedings). Removal proceedings are not inevitable, as the DACA program demonstrates.

[7] *See id.* § 1229c(a)(1) (noting that voluntary departure is only available before completion of removal proceedings), *id.* § 1182(a)(9) (aliens previously removed).

over the decision to institute removal proceedings, and Elldakli and others have no mechanism to force the issue.[8] It makes little sense to say that a noncitizen has failed to exhaust his remedies when he declines to break the law in hopes of additional review.

The APA demands that plaintiffs exhaust their remedies before the agency prior to seeking review in federal court.[9] But surely the above-described process is not what Congress meant when it required would-be plaintiffs to seek the government's final word on the matter. The Supreme Court has noted, "[t]he doctrine provides 'that no one is entitled to judicial relief for a supposed or threatened injury until the *prescribed* administrative remedy has been exhausted.'"[10] Removal proceedings do not represent this "prescribed" administrative appeal process. It is difficult to see how Congress could have intended any administrative appeal to operate this way given that the process requires noncitizens to break this country's immigration laws in the normal course of pursuing review. Treating removal charges as an appeal also does little to further the other stated goals of exhaustion, such as efficiency and agency error correction.[11] And USCIS and the Executive Office of Immigration Review sit in separate departments of

---

[8] *See Alvidres-Reyes v. Reno*, 180 F.3d 199, 201 (5th Cir. 1999) (discussing "the Attorney General's long-established discretion to decide whether and when to prosecute or adjudicate removal proceedings").

[9] *See* 5 U.S.C. § 704. The majority states that 8 U.S.C. § 1252(d) is relevant to the exhaustion requirements here, but that provision applies only to "a final order of removal," not a USCIS denial of adjustment of status unrelated to removal proceedings. This court often interprets the provision to bar consideration of issues not presented to the BIA. *See Vazquez v. Sessions*, 885 F.3d 862, 868 (5th Cir. 2018).

[10] *Woodford v. Ngo*, 548 U.S. 81, 88–89 (2006) (quoting *McKart v. United States*, 395 U.S. 185, 193 (1969)) (emphasis added).

[11] *Id.* at 89.

No. 22-20344

the federal government, meaning that the relevant agency has already said all it intends to say on the matter.[12]

USCIS's decision is also final action under the APA because it is not "inoperative" between the time of the denial and initiation of removal proceedings.[13] The noncitizen incurs "legal consequences" immediately upon denial of an immigrant visa, and failure to abide by the dictates of a nonimmigrant visa contravenes federal law and carries legal risks.[14] USCIS could escape this result by rendering its determination "inoperative" pending "appeal to superior agency authority."[15] USCIS naturally does not make its decisions inoperative because removal proceedings do not function as an administrative appeal.

For these reasons and others, at least four of our sister circuits have determined that USCIS's decision is preliminary—meaning not final—only when removal proceedings are pending, as in that case opportunity for review is imminent.[16] To my knowledge, only one other circuit agrees with this court

_____

[12] USCIS is part of the Department of Homeland Security, while EOIR is within the Department of Justice.

[13] 5 U.S.C. § 704; *Darby v. Cisneros*, 509 U.S. 137, 152 (1993)

[14] *U.S. Army Corps of Engineers v. Hawkes Co.*, 578 U.S. 590, 597 (2016) (citation omitted). Legal permanent residents may also, for example, have greater access to certain federal benefits programs. *See* 8 U.S.C. § 1612(a)(2)(B).

[15] 5 U.S.C. § 704.

[16] *See Hosseini v. Johnson*, 826 F.3d 354, 362 (6th Cir. 2016) ("[W]e hold that where no removal proceedings are pending, the agency's denial of an application for status adjustment . . . marks the consummation of the agency's decision-making process."); *Cabaccang v. U.S. Citizenship & Immigr. Servs.*, 627 F.3d 1313, 1317 (9th Cir. 2010) ("Accordingly, we join our sister circuits in holding that district courts lack jurisdiction to review denials of status adjustment if removal proceedings are simultaneously pending."); *Pinho v. Gonzales*, 432 F.3d 193, 202 (3d Cir. 2005) ("We hold that an AAO decision is final where there are no deportation proceedings pending in which the decision might be reopened or challenged."); *Howell v. I.N.S.*, 72 F.3d 288, 293 (2d Cir. 1995) ("In the

No. 22-20344

in barring APA review without imminent removal proceedings.[17]

The parties in this case debate whether a jurisdiction stripping provision, 8 U.S.C. § 1252(a)(2)(B)(i), divests federal courts of the power to review adjustment of status applications under 8 U.S.C. § 1255. The Supreme Court's recent opinion in *Patel v. Garland* construes the jurisdiction stripping provision broadly,[18] although our court's precedent does not read the provision to reach APA suits challenging USCIS adjustment of status decisions.[19] It is important to note that the majority's position blocking review of agency activity may not be coterminous with the jurisdiction stripping provision. The provision does not directly discuss, for example, adjustment of status decisions for refugees,[20] special agricultural workers,[21] and certain others on visitor and diplomatic visas.[22] Additional unexpected consequences will likely flow from the conclusion that immigration decisions are intermediate even when removal proceedings remain just a mere possibility.

The government all but admits error in its treatment of Elldalki's petitions. This court's precedent, which may still bind, indicates that the INA's jurisdiction stripping provisions do not bar review of USCIS

_____

present case, we think that the district court lacked jurisdiction to review the district director's denial of Howell's application for adjustment of status once deportation proceedings commenced . . . ."); *see also Randall v. Meese*, 854 F.2d 472, 481 (D.C. Cir. 1988) (determining that claims are not ripe until the conclusion of ongoing removal proceedings).

[17] *See McBrearty v. Perryman*, 212 F.3d 985 (7th Cir. 2000).

[18] *See Patel v. Garland*, 142 S. Ct. 1614, 1622, 1627 (2022).

[19] *Duarte v. Mayorkas*, 27 F.4th 1044, 1057 (5th Cir. 2022).

[20] *See* 8 U.S.C. § 1159.

[21] *See id.* § 1160.

[22] *See id.* § 1255b.

No. 22-20344

adjustment of status decisions. Yet the majority opinion twists administrative law's exhaustion requirement to prevent the court from granting relief, and in doing so it lays the groundwork for future errors.