# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

April 11, 2023

Lyle W. Cayce
Clerk

—————————

No. 22-50315

—————————

Haseeb Abdullah,

*Plaintiff—Appellant*,

*versus*

Ken Paxton; Glenn Hegar,

*Defendants—Appellees*.

_____

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:20-CV-1245

_____

Before Richman, *Chief Judge*, and Haynes and Graves, *Circuit Judges*.

Per Curiam:

In this case, Haseeb Abdullah challenges the constitutionality of Texas Government Code § 808. He contends that § 808's divestment requirement violates the First Amendment and the Due Process Clause. The district court concluded that Abdullah lacked standing and dismissed his claims. For the reasons discussed below, we AFFIRM.

No. 22-50315

## I.    Factual Background

Abdullah is a former State of Texas employee and a current Travis County employee.    By virtue of these employments, Abdullah has contributed to (and is therefore a beneficiary of) two relevant retirement plans.  The first is a defined-benefit plan maintained by the Texas Employee Retirement System ("ERS"), and the second is a defined-benefit plan administered by the Texas County and District Retirement System ("TCDRS"). ERS and TCDRS (together, the "Systems") collect employee contributions in a fund and manage the fund's investment to increase its overall value.  At retirement, Abdullah will be eligible to receive fixed monthly payments.  The payment amount will be calculated based on a number of standard factors.[1]  Notably, however, the amount will be independent of the market performance of the overall fund and any individual investment decisions made by the Systems.

Because the Systems are public entities, their investments are subject to the oversight of the Texas Legislature. *See, e.g.*, TEX. GOV'T CODE §§ 802.203(a), 811.003, 801.107.  In 2017, the Texas Legislature enacted Texas Government Code § 808, which is a prohibition on investment in companies that boycott the country of Israel or otherwise engage in the "BDS movement."[2]  Under § 808, the Texas Comptroller is required to maintain a

---

[1] The ERS plan payments are calculated based on, inter alia, an employee's start date, years of service, and salary; the TCDRS plan payments are based on overall member contributions, a guaranteed seven percent interest rate (compounded annually), and other factors not relevant here.

[2] The "BDS movement" is a pro-Palestinian movement that "seeks to put economic pressure on Israel" to substantially improve its treatment of Palestinians. *Amawi v. Paxton*, 956 F.3d 816, 819–20 & n.1 (5th Cir. 2020). "BDS" refers to the actions that the movement's participants engage in, including boycotts, divestments, and sanctions.  In an effort to curtail participation in the BDS movement, many states have enacted "anti-BDS

No. 22-50315

list of companies that boycott Israel and provide that list to the Systems. Tᴇx. Gᴏᴠ'ᴛ Cᴏᴅᴇ § 808.051. The Systems are then directed to "sell, redeem, divest, or withdraw all publicly traded securities of the [listed] company." *Id.* § 808.053(d). If the Systems fail to comply, the Texas Attorney General is authorized to bring an enforcement action. *Id.* § 808.102.

Relevant here, Abdullah sued the Texas Comptroller and the Texas Attorney General (collectively, "Defendants") in federal court. He sought a declaratory judgment that § 808's divestment requirement violates (1) the Freedom of Speech Clause; (2) the Establishment Clause; and (3) the Due Process Clause. Defendants moved to dismiss under Federal Rules of Civil Procedure 12(b)(1) and (6). The district court concluded that Abdullah lacked Article III standing and dismissed his claims. Abdullah timely appealed.

## II.    Jurisdiction & Standard of Review

We have appellate jurisdiction under 28 U.S.C. § 1291.[3]   We review a district court's dismissal for lack of standing de novo. *Air Evac EMS, Inc.*

---

laws." Abdullah alleges in various claims that § 808 is one such law and is unconstitutional. But—given our decision on standing—we do not reach the merits of those claims.

[3] Defendants urge that we lack appellate jurisdiction. In doing so, they observe that (1) Abdullah originally also named two individual directors as defendants; (2) he later moved to voluntarily dismiss the directors; and (3) the district court thereby dismissed the directors, *without prejudice*. Because the directors were dismissed without prejudice, Defendants contend that the order appealed from here is not "final" under § 1291 since it technically did not resolve all claims against all parties. *See Williams v. Seidenbach*, 958 F.3d 341, 343 (5th Cir. 2020) (en banc).

We disagree. Though a voluntary dismissal could preclude our review in some situations, that is not the case here. Abdullah concedes that his claims against the directors were barred by sovereign immunity—a jurisdictional defect. Under our precedent, dismissals based on jurisdictional issues must, by their very nature, be without prejudice. *See, e.g.*, *Warnock v. Pecos County*, 88 F.3d 341, 343 (5th Cir. 1996). But, regardless of how

3

*v. Tex. Dep't of Ins., Div. of Workers' Comp.*, 851 F.3d 507, 513 (5th Cir. 2017). In doing so, we apply the same standard as the district court—accepting all well-pleaded factual allegations in the complaint as true and viewing them in the light most favorable to the plaintiff. *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008).

## III.    Discussion

We agree with the district court that Abdullah lacks standing to pursue his claims.  Article III grants jurisdiction to federal courts only over actions involving an "actual case or controversy." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983).  Accordingly, Abdullah bears the burden of establishing the three "familiar elements of standing." *Shrimpers & Fishermen of RGV v. Tex. Comm'n on Env't Quality*, 968 F.3d 419, 424 (5th Cir. 2020) (per curiam).  To do so, he must demonstrate that he has suffered "(1) an injury in fact, (2) that is fairly traceable" to the Defendants' actions, (3) that is likely to be redressed by a favorable outcome. *Id.*; *see also Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992).  All three elements are "an indispensable part of [Abdullah's] case." *Lujan*, 504 U.S. at 561.

Our analysis begins and ends with the first element: injury in fact.  To satisfy this requirement, Abdullah must plead that "he has sustained or is immediately in danger of sustaining some direct injury." *City of Los Angeles*, 461 U.S. at 101 (internal quotation marks and citation omitted).  That injury needs to be "concrete and particularized," as well as "actual or imminent." *K.P. v. LeBlanc*, 627 F.3d 115, 122 (5th Cir. 2010) (quotation omitted). Importantly, it cannot be speculative, conjectural, or hypothetical. *Clapper*

---

it was titled, the order in this circumstance was analogous to a dismissal *with prejudice.*  In other words, Abdullah cannot re-plead his claims against the directors—they are plainly precluded by the jurisdictional bar.  Thus, the district court's order was sufficiently final, and our appellate jurisdiction is sound.

*v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013).   Allegations of only a "possible" future injury similarly will not suffice.  *Id.*; *see also Shrimpers*, 968 F.3d at 424.   Abdullah alleges he has incurred two types of injuries in connection with § 808's divestment requirement: (1) a threat of a future economic loss and (2) several constitutional violations.  We address both in turn, but neither proves successful.

## A. Threat of Future Economic Injury

First, Abdullah claims he satisfied the injury-in-fact requirement because he has alleged there is a realistic risk that § 808 will cause him to suffer future economic harm.  At the outset, we note that Abdullah concedes that he has not *currently* sustained any monetary injury—he has not pleaded that he is eligible for retirement, that he currently qualifies for any payments from the Systems, or, most importantly, that those payments have been reduced as a result of the divestment requirement.

Rather, Abdullah's purported injury rests on an entirely forward-looking theory.  He avers that the Systems—as managers of his vested financial benefits—are required to base their divestment decisions on the dictates of § 808, rather than pure free market considerations.  He contends that these constraints on the Systems' discretion will have an adverse effect on the fund's overall financial health, reducing his future pension benefits. Per Abdullah, this threat of diminished future payments is sufficient to establish the injury-in-fact requirement.

We disagree.   At the outset, we observe that the divestment requirement is not absolute.  Rather, the Texas Legislature notably built safeguards into § 808 providing several relevant exceptions.  For example, under § 808.005, the Systems do not have to comply if they conclude that divesting "would be inconsistent with [their] fiduciary responsibilit[ies]" or would conflict with "other duties imposed by law."   Similarly,

No. 22-50315

§ 808.056(a)(1) permits investment in listed companies if the Systems determine that divesting will cause them to "suffer a loss in the hypothetical value of all assets under management." Finally, under § 808.056(a)(2), the Systems are exempted from compliance if the relevant portfolios utilize "a benchmark-aware strategy," that "would be subject to an aggregate expected deviation from its benchmark as a result of having to divest."

With those exceptions in mind, we turn to Abdullah's allegations here. We conclude that his alleged injury is—at most—speculative; he has wholly failed to allege that any risk of economic harm is "*certainly* impending." *See Clapper*, 568 U.S. at 409 (emphasis in original) (quotation omitted). Abdullah's future benefits do *not* hinge on market performance; at retirement, he will receive payments from two separate defined-benefit plans. As the Supreme Court has observed, defined-benefit plans—by their very nature—do not fluctuate based on the value of the overall fund. *See Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615, 1618 (2020) (observing that payments under such plans do not fluctuate based on any "good or bad" investment or divestment decisions). The defined-benefit plans Abdullah is enrolled in are no different—as noted above, his payments are fixed, and calculation of those payments is based on entirely independent factors.

Because Abdullah cannot show how any investment or divestment decisions will affect *his* future payments, he cannot show that he has suffered an injury. *Id.* at 1619. Put plainly, because "the outcome of this suit [will] not affect [his] future benefit payments," he lacks any concrete stake in this lawsuit. *Id.*

The only way Abdullah could demonstrate he will "actually" suffer future economic harm is if he plausibly alleged that, as a result of § 808's constraints, the Systems will not be able to pay out his benefits *at all* when he reaches retirement. *See id.* at 1621. Abdullah tries his hand at this argument,

urging that the Systems are underfunded, so there is a credible threat the fund will fail. But we are unconvinced—this theory is simply too speculative (and also ignores Texas's ability to obtain funds by taxes, fees, assessments, etc.).

In sum, we are unconvinced by Abdullah's argument that this injury is "certainly impending"—rather, it's a speculative view of the distant future, at best. *Prestage Farms, Inc. v. Bd. of Superiors of Noxubee Cnty.*, 205 F.3d 265, 268 (5th Cir. 2000). Accordingly, the threat of "future injury under these circumstances is too conjectural and hypothetical to provide Article III standing." *Id.*

## B. Constitutional Injuries

Abdullah alternatively asserts that § 808 inflicts several constitutional injuries sufficient for Article III standing. We recognize that violations of constitutional rights may of course, in some instances, satisfy the injury-in-fact requirement. *See TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (2021). But the Supreme Court has long rejected the argument that a "claim that the Constitution has been violated" is enough on its own "to confer standing." *See Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 485 (1982). Rather, Abdullah must still establish a violation of his own personal rights. *See id.* at 474–75; *see also Barber v. Bryant*, 860 F.3d 345, 352–53 (5th Cir. 2017) ("The Establishment Clause is no exception to the requirement of standing," and a plaintiff still "must allege a personal violation of rights.").

Abdullah has failed to allege facts demonstrating that § 808 causes *him* an injury by violating his own personal Fourteenth or First Amendment rights. As to the former, in order to assert a due process claim, Abdullah must allege that he will suffer an injury to a vested property interest. *See Bryan v. City of Madison*, 213 F.3d 267, 274–75 (5th Cir. 2000); *Blackburn v. City of Marshall*, 42 F.3d 925, 935 (5th Cir. 1995). He certainly has a property

interest in his future payments from the Systems. *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 439–40 (1999); *see also Thole*, 140 S. Ct. at 1620. However, for the reasons discussed above, Abdullah has failed to plead that § 808 poses any credible threat to those payments. Therefore, his due process claim does not provide an independent basis for standing.

As to the latter—the First Amendment claims—Abdullah does not allege that § 808 infringes on *his* ability to speak. Nor does he allege that § 808 infringes on *his* own religious beliefs. He cannot assert arguments based only on other's rights (such as the companies that are on the divestment list). *See Lujan*, 504 U.S. at 563 ("[T]he party seeking review" must "be himself among the injured." (quotation omitted)). Abdullah "must assert *his own legal rights and interests*, and cannot rest his claim to relief on the legal rights or interests of third parties." *Valley Forge*, 454 U.S. at 474 (emphasis added) (quotation omitted). He has failed to do so here.

In sum, we conclude Abdullah's constitutional claims do not establish injury in fact as required for Article III standing.[4]

## IV.    Conclusion

For the reasons discussed above, we AFFIRM the district court's dismissal of Abdullah's claims.

---

[4] Defendants also urge that sovereign immunity bars Abdullah's claims. Because we conclude Abdullah lacks standing, we need not reach that issue. *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007) (recognizing that while "jurisdictional questions ordinarily must precede merits determinations[,] . . . there is no mandatory sequencing of jurisdictional issues" (internal quotation marks and citation omitted)).