# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

January 14, 2026

Lyle W. Cayce
Clerk

No. 25-20073

Maribel Sayegh de Kewayfati,

*Plaintiff—Appellant*,

*versus*

Pamela Bondi, *U.S. Attorney General*; Angelica Alfonso-Royals, *Acting Director of U.S. Citizenship and Immigration Services*; Kristi Noem, *Secretary, U.S. Department of Homeland Security*; Houston Asylum Office Director,

*Defendants—Appellees*,

consolidated with

No. 25-20101

Marlen Sayegh Agam de Maari,

*Plaintiff—Appellant*,

*versus*

Kristi Noem, *Secretary, U.S. Department of Homeland Security*; Houston Asylum Office Director; Pamela Bondi, *U.S. Attorney General*; Angelica Alfonso-Royals, *Acting Director of U.S. Citizenship and Immigration Services*,

*Defendants—Appellees.*

—————————————————

Appeal from the United States District Court
for the Southern District of Texas
USDC Nos. 4:24-CV-180, 4:23-CV-4129

—————————————————

Before Barksdale, Willett, and Duncan, *Circuit Judges.*[*]

Don R. Willett, *Circuit Judge*:

Two Venezuelan sisters ask us to review nonfinal denials of their affirmative-asylum applications, contending that their Temporary Protected Status forecloses any present opportunity to renew those claims in removal proceedings. Separate district courts dismissed the sisters' suits for lack of final agency action under the Administrative Procedure Act (APA).[1] They were right to do so.

Federal courts are courts of limited jurisdiction—not overseers of unfinished agency business. The challenged denials neither consummate the Government's decisionmaking on the sisters' asylum eligibility nor determine legal rights or obligations. Instead, they mark a midstream pause in an ongoing administrative process—one that remains open to further agency consideration. Because these nonfinal actions are not yet subject to judicial review, we cannot intervene prematurely. We therefore AFFIRM both district courts' dismissals. And because the absence of final agency action deprived those courts of subject-matter jurisdiction, we MODIFY the dismissal entered with prejudice to one without prejudice.

—————————————————

[*] Judge Barksdale concurs in the judgment only.

[1] Both district courts reached the same finality conclusion but relied on different procedural vehicles for dismissal: one court dismissed without prejudice for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1), and the other dismissed with prejudice for failure to state a claim under Rule 12(b)(6).

2

## I

Federal immigration law often resembles a house of mirrors, with overlapping statutes and regulations reflecting upon one another. Some brief scene-setting is therefore in order. We begin with a concise primer on the relevant statutory and regulatory framework, followed by a recounting of the challenged agency actions.

## A

The Immigration and Nationality Act (INA) provides that an alien who unlawfully enters or remains in the United States is subject to removal to her home country.[2] Congress has, however, created several statutory protections that bar removal in defined circumstances, two of which are relevant here: asylum and Temporary Protected Status (TPS).[3]

## 1

The first statutory protection, asylum, permits an alien who qualifies as a refugee to lawfully remain in the United States.[4] An alien may seek asylum in one of two ways.

First, she may apply *affirmatively* within one year of arriving in the United States by filing the appropriate form with U.S. Citizenship and Immigration Services (USCIS)—a component of the Department of Homeland Security (DHS)—before the initiation of any removal proceedings.[5] After an application is filed, a USCIS asylum officer conducts a nonadversarial interview to gather relevant information bearing on asylum

---

[2] 8 U.S.C. § 1227(a).

[3] *Id.* §§ 1158, 1254a.

[4] *Id.* § 1158(b)(1)(A); *see id.* § 1101(a)(42) (defining "refugee").

[5] *Id.* § 1158(a)(2)(B)–(D); 8 C.F.R. §§ 208.2, 208.3, 208.9.

eligibility.[6] At all times, the alien bears the burden of establishing her refugee status.[7]

After reviewing an alien's application,[8] the "asylum officer . . . *may* grant . . . asylum."[9] That decision is discretionary.[10] If the officer does not grant asylum, the officer may either deny the application on the merits or dismiss it for procedural reasons, including abandonment or failure to appear.[11] What follows depends on the alien's immigration status.[12] For inadmissible or deportable aliens, USCIS refers the case to the Immigration Court—comprised of an Immigration Judge (IJ) and the Board of Immigration Appeals (BIA), both housed within the Department of Justice (DOJ)—for removal proceedings.[13] But for aliens with lawful status, the

---

[6] 8 C.F.R. §§ 208.9(b), (f).

[7] *Id.* § 208.13(a); *see also* 8 U.S.C. § 1101(a)(42).

[8] 8 C.F.R. § 208.9(f).

[9] *Id.* § 208.14(b); 8 U.S.C. § 1158(b)(1)(A) ("[T]he Secretary of Homeland Security or the Attorney General *may* grant asylum." (emphasis added)).

[10] *See Biden v. Texas*, 597 U.S. 785, 802 (2022) (recognizing that the term "'may' *clearly* connotes discretion" (emphasis in original) (citation omitted)). The APA precludes judicial review of "agency action . . . committed to agency discretion by law." 5 U.S.C. § 701(a)(2). And "this court has long recognized that 8 U.S.C. § 1[2]52(g) is designed to protect the discretionary decisions of immigration authorities in matters related to removal and deportation." *Duarte v. Mayorkas*, 27 F.4th 1044, 1055 (5th Cir. 2022); *see also Alvidres-Reyes v. Reno*, 180 F.3d 199, 201 (5th Cir. 1999) ("The Congressional aim of § 1252(g) is to protect from judicial intervention the Attorney General's long-established discretion to decide whether and when to prosecute or adjudicate removal proceedings or to execute removal orders.").

[11] 8 C.F.R. § 208.14(c).

[12] *See id.* § 208.14(c)(1)–(4).

[13] *Id.* § 208.14(c)(1).

officer denies the application without commencing removal proceedings.[14] Importantly, no regulation or statute precludes the Government from commencing removal proceedings later if and when that lawful status ends.

Second, an alien may seek asylum *defensively* during removal proceedings.[15] The regulations do not require an alien to first pursue affirmative asylum, permitting her to choose when to press her claim. Once removal proceedings begin, the IJ considers the asylum application *de novo*,[16] and that decision is appealable to the BIA.[17] Only after exhausting these administrative remedies may the alien petition the appropriate federal court of appeals for review of the asylum denial.[18]

2

TPS, the second statutory protection, shields nationals of designated countries from involuntary removal when safe return is not possible because of extraordinary conditions—such as ongoing armed conflict, a natural disaster, or an epidemic.[19] DHS[20] determines which foreign countries

---

[14] *Id.* § 208.14(c)(2); *see also* USCIS, *Affirmative Asylum Procedures Manual*, at 213 (2016), https://www.uscis.gov/sites/default/files/document/guides/AAPM.pdf.

[15] *See* 8 C.F.R. § 208.2(b); *Ramirez-Osorio v. I.N.S.*, 745 F.2d 937, 945 (5th Cir. 1984) ("In deportation proceedings, the alien's right to petition for asylum is in the nature of a defense assertable by an alien.").

[16] 8 C.F.R. § 208.14(a).

[17] *Id.* §§ 1003.1(b), 1003.38(a).

[18] 8 U.S.C. § 1252(a)(5).

[19] *Id.* § 1254a(b); *Sanchez v. Mayorkas*, 593 U.S. 409, 412 (2021); *Duarte*, 27 F.4th at 1049.

[20] The Homeland Security Act of 2002 transferred many functions vested in the Attorney General to the Secretary of Homeland Security. Pub. L. No. 107–296, 116 Stat. 2135 (2002). As a result, any statutory references concerning the transferred functions "shall be deemed to refer to [DHS]" rather than the Attorney General. 6 U.S.C. § 557.

receive TPS designation.[21] An initial designation typically lasts between six and eighteen months and may be extended in successive six- to eighteen-month increments.[22] Designated countries must be reviewed periodically to determine whether the conditions preventing safe return continue to exist.[23] Once a country is designated, eligible nationals may apply for TPS protection.[24] Those who qualify must remain continuously present in the United States and periodically reregister to maintain that protection.[25]

Along with protection from removal, TPS also confers lawful status, authorizing an alien to remain and work in the United States.[26] But unlike asylum, TPS "is not itself a 'pathway to family reunification, permanent residency, or citizenship.'"[27] Instead, TPS "freezes an alien's position within the immigration system."[28] Because an alien with active TPS is lawfully present and not removable, USCIS does not immediately refer a denied asylum application to an IJ.[29]

Despite its significant benefits, TPS may also slow the administrative-review process because a denied asylum application is not immediately

---

[21] 8 U.S.C. § 1254a(b).

[22] *Id.* § 1254a(b)(2)–(3).

[23] *Id.* § 1254a(b)(3)(A).

[24] *Id.* § 1254a(c).

[25] *Id.* § 1254a(c)(3)(C).

[26] *Id.* §§ 1254a(a)(1)(A)–(B), 1254a(f)(4); *see also Sanchez*, 593 U.S. at 412.

[27] *Duarte*, 27 F.4th at 1053 (quoting *Dhakal v. Sessions*, 895 F.3d 532, 537 (7th Cir. 2018)).

[28] *Id.*

[29] *Sanchez*, 593 U.S. at 412; 8 C.F.R. § 208.14(c)(2).

referred for removal proceedings.[30] For that reason, TPS is voluntary and places control over its benefits and burdens with the alien, who must apply for TPS, reregister as required, and maintain continuous presence in the United States.[31] An alien loses TPS by failing to satisfy these requirements or upon DHS's termination of her country's designation.[32]

## B

Two sisters, Maribel Sayegh de Kewayfati (Kewayfati) and Marlen Sayegh Agam de Maari (Maari), are Venezuelan nationals with TPS who filed affirmative-asylum applications in 2014. Their asylum applications alleged both past persecution and a fear of future persecution upon return to their home country. Maari interviewed with a USCIS asylum officer on January 17, 2024, and Kewayfati interviewed three days later on January 20, 2024. While those applications remained pending, each sister received TPS under Venezuela's designation.

After delays in adjudicating their asylum applications, each sister sued the Attorney General and other Executive Branch officials for inaction and unlawful delay. USCIS issued notices of intent to deny the asylum applications shortly thereafter, and the sisters formally responded. After concluding that the responses were unpersuasive, USCIS issued denial letters concluding that the sisters had failed to establish a reasonable possibility of persecution upon return to Venezuela. The letters stated that

---

[30] 8 C.F.R. § 208.14(c)(2); *see also* USCIS, *Affirmative Asylum Procedures Manual*, at 213 (2016), https://www.uscis.gov/sites/default/files/document/guides/AAPM.pdf.

[31] *See* 8 U.S.C. § 1254a(c) (describing the TPS application process and reregistration process); *id.* § 1254a(c)(3)(B)–(C).

[32] *Id.* § 1254a(c)(3)(B) (failure to remain continuously present); *id.* § 1254a(c)(3)(C) (failure to reregister); *id.* § 1254a(b)(3)(B) (termination of country status).

the asylum denials could not be appealed and that, due to TPS, there would be no referral at that time to the IJ for removal proceedings.

After receiving the denial letters, the sisters amended their complaints to instead ask the district courts to vacate the denials and declare them arbitrary and capricious and contrary to law under the APA. According to their amended complaints, the sisters argued that judicial review was warranted because they had exhausted all available administrative channels and lacked an adequate remedy otherwise as TPS beneficiaries. The Government moved to dismiss both suits for lack of subject-matter jurisdiction under Rule 12(b)(1) and, alternatively, for failure to state a claim under Rule 12(b)(6).

Both district courts dismissed for lack of final agency action. The courts, however, relied on different procedural vehicles: Rule 12(b)(1) in Maari's case and Rule 12(b)(6) in Kewayfati's case. We consolidated these cases on appeal.

II

We have appellate jurisdiction under 28 U.S.C. § 1291.[33] We review *de novo* district court orders dismissing a claim for lack of subject-matter

---

[33] Although neither district-court docket reflects the entry of a separate final judgment, each court's dismissal order "end[ed] the litigation" by dismissing the sisters' claims. *Catlin v. United States*, 324 U.S. 229, 233 (1945). Neither lawsuit proceeded below after the dismissal orders, and no party contends that the dismissal orders are not final judgments. "Where, as here, the district court clearly intend[ed] to effect a final dismissal of a claim, we will construe its order accordingly[.]" *Picco v. Glob. Marine Drilling Co.*, 900 F.2d 846, 849 n.4 (5th Cir. 1990) (citation omitted). In any event, more than "150 days have run from the entry [of the dismissal orders] in the civil docket." FED. R. CIV. P. 58(c)(2)(B).

jurisdiction or for failure to state a claim.[34] Resolution of these consolidated appeals turns on whether the USCIS denial letters qualify as final agency action.[35] They do not. Accordingly, the district courts correctly dismissed the sisters' APA lawsuits.

Under the APA, "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof."[36] But this grant of judicial review is limited to challenges "made reviewable by statute" or, if not made reviewable, involving "final agency action for which there is no other adequate remedy in a court."[37] Only the second category applies here. The Supreme Court held in *Bennett v. Spear* that agency action is final if it satisfies two conditions: (1) the action "mark[s] the consummation of the agency's decisionmaking process" and (2) is one "by which rights or obligations have been determined, or from which legal consequences will

---

[34] *McDonnel Grp., L.L.C. v. Great Lakes Ins. SE, UK Branch*, 923 F.3d 427, 430 (5th Cir. 2019).

[35] The sisters' amended complaints also asserted that subject-matter jurisdiction exists under the Declaratory Judgment Act and 28 U.S.C. § 1331 as a federal question. But the Declaratory Judgment Act does not provide an independent basis for subject-matter jurisdiction. *In re B-727 Aircraft Serial No. 21010*, 272 F.3d 264, 270 (5th Cir. 2001). "And § 1331 alone does not provide jurisdiction for agency actions" absent a statutory waiver of sovereign immunity. *Elldakli v. Garland*, 64 F.4th 666, 670 (5th Cir. 2023). Jurisdiction thus "hinges" on the APA's waiver. *Id.*; *see also Stockman v. FEC*, 138 F.3d 144, 151 n.13 (5th Cir. 1998) (citations omitted) ("[T]he APA does not create an independent grant of jurisdiction to bring suit. . . . If . . . the APA creates a cause of action . . . jurisdiction exists under the general federal question statute, not the APA. . . . The APA then serves as the waiver of sovereign immunity that allows a private party to sue the government.").

[36] 5 U.S.C. § 702.

[37] *Id.* § 704.

flow."[38] In other words, "[t]he core question is whether the agency has completed its decisionmaking process, and whether the result of that process is one that will directly affect the parties."[39] We apply those requirements here.

A

We begin with the first *Bennett* prong: whether a USCIS denial letter reflects the consummation of the agency's decisionmaking process for an affirmative-asylum application. The sisters contend that it does. Because TPS prevents removal, they argue, no further administrative review is available. We disagree. "An agency action is not final if it is only 'the ruling of a subordinate official,' or 'tentative.'"[40] That is precisely the case here.

Although we have yet to consider whether USCIS's denial of affirmative asylum to a TPS beneficiary constitutes final agency action, our sister circuit has squarely addressed this exact scenario. In *Dhakal v. Sessions*, the Seventh Circuit rejected an alien's APA challenge based on USCIS's denial of his asylum application.[41] In doing so, the court persuasively explained that such a denial—"when viewed in light of the intended, complete administrative process"—is nonfinal because "the executive branch simply has not completed its review of [asylum] claims" at the USCIS stage.[42]

---

[38] 520 U.S. 154, 177–78 (1997) (citation omitted); *see also Texas v. Becerra*, 89 F.4th 529, 538 (5th Cir. 2024) (citing *Bennett*'s two conditions).

[39] *Franklin v. Massachusetts*, 505 U.S. 788, 797 (1992).

[40] *Id.* at 797 (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 151 (1967)).

[41] 895 F.3d at 540.

[42] *Id.*

25-20073
c/w No. 25-20101

This USCIS stage is only one—and a preliminary one—in a broader administrative process.[43] Once an alien is referred to the Immigration Court, the IJ "'develops the more extensive factual record,'" applies its specialized expertise, and renders a decision subject to review by the BIA,[44] which affords a greater "chance to discover and correct . . . errors" before any judicial intervention.[45] That structure reflects Congress's considered judgment that the IJ and the BIA should have the first opportunity to adjudicate asylum claims before federal courts weigh in.[46]

Viewed against this statutory backdrop, a USCIS officer's denial does not mark the end of the review process. Rather, it is an early step in a larger, integrated administrative process that culminates with a BIA decision that "speaks with final authority for the executive branch" on asylum eligibility.[47] Until that point, the executive branch has not completed its decisionmaking on the alien's asylum claims. The USCIS officer's denial, in this respect, is better understood as "'a tentative recommendation than a final and binding determination,' or 'the ruling of a subordinate official,'" rather than a final resolution.[48]

The Seventh Circuit emphasized that Congress designed the asylum framework to consolidate and channel review through a "single

---

[43] *See id.* at 539 ("An alien need not pursue an affirmative asylum process.").

[44] *Id.* (quoting *Kashani v. Nelson*, 793 F.2d 818, 826 (7th Cir. 1986)).

[45] *Kashani*, 793 F.2d at 826 (citation omitted); *see also McKart v. United States*, 395 U.S. 185, 195 (1969) ("[S]ince agency decisions . . . frequently require expertise, the agency should be given the first chance to exercise that discretion or to apply that expertise.").

[46] *Dhakal*, 895 F.3d at 539; *see also McKart*, 395 U.S. at 195.

[47] *Dhakal*, 895 F.3d at 540.

[48] *Id.* (quoting *Franklin*, 505 U.S. at 798).

11

administrative process," even though that process spans multiple agencies.[49] Finality attaches only when that process runs its full course. Where, as here, a TPS beneficiary remains protected from removal and has not yet proceeded through defensive-asylum adjudication, the executive branch has not consummated its decisionmaking. We therefore agree with our sister circuit that the denial of affirmative asylum is only a preliminary checkpoint and does not preclude further administrative review.

As additional support for this conclusion, we recently held in an analogous context that USCIS's adjustment-of-status denials are not final because the applicants may still seek review of those interim decisions in future removal proceedings.[50] The same logic applies here. A TPS beneficiary who is denied affirmative asylum at an early administrative juncture may later pursue asylum defensively in removal proceedings. After all, as the sisters themselves recognize, TPS merely "freezes an alien's position within the immigration system" without transforming status.[51] This temporary freeze does not preclude an alien from seeking asylum at some later point, particularly when the applicable regulations expressly contemplate defensive asylum.[52] A TPS beneficiary may seek defensive asylum in one of two ways: either withdraw from TPS prior to its expiration to eliminate the block on removal or wait until Venezuela's TPS designation expires. These options may not be ideal to the sisters, but either one provides

---

[49] *Id.* at 540 n.10.

[50] *Elldakli*, 64 F.4th at 670–71 (holding that a status adjustment is not final agency action because "the alien retains the right to *de novo* review of that decision in h[er] final removal proceedings").

[51] *Duarte*, 27 F.4th at 1053.

[52] *See* 8 C.F.R. § 208.2(b); *Ramirez-Osorio*, 745 F.2d at 945 ("In deportation proceedings, the alien's right to petition for asylum is in the nature of a defense assertable by an alien.").

eventual review. It is thus inaccurate for the sisters to contend that they "now seek review in the only available avenue." Other avenues exist, just not in the manner the sisters prefer.

To be sure, the Government retains discretion over the initiation of removal proceedings.[53] And while this reality could result in a period of inaction that places a TPS beneficiary in a "limbo state," such a state is nevertheless the result of enforcement discretion not subject to judicial review.[54] As the Seventh Circuit recognized, respecting this discretion "promotes efficiency" by preventing the agency from "expend[ing] its resources on initiating and prosecuting its case to obtain what might be an inconsequential removal order" should the sisters' TPS be extended or should they obtain another form of lawful status.[55] It also allows the agency to "prioritize[] the cases for removal where aliens . . . must assert asylum as a defense to otherwise imminent removal."[56] The sisters may dislike how the asylum statute balances these competing interests. But that disagreement does not authorize a judicial override of Congress's legislative judgment.[57] Any unfortunate consequences or incentives are for Congress to fix—not us.

---

[53] *See* 8 U.S.C. § 1252(g); *see also Dhakal*, 895 F.3d at 541 n.11.

[54] *See Heckler v. Chaney*, 470 U.S. 821, 831 (1985) ("This Court has recognized on several occasions over many years that an agency's decision not to prosecute or enforce, whether through civil or criminal process, is a decision generally committed to an agency's absolute discretion." (citations omitted)). The sisters do not challenge the applicable regulation or the discretion it authorizes to open removal proceedings against an unsuccessful asylum applicant previously under TPS. *See* 8 C.F.R. § 208.14(c)(2); *see also* 8 U.S.C. § 1252(g).

[55] *Dhakal*, 895 F.3d at 541.

[56] *Id.* at 540 (footnote omitted).

[57] *See Moosa v. I.N.S.*, 171 F.3d 994, 1009 (5th Cir. 1999) (declining to "second-guess . . . policy choices properly made by the legislative branch); *Bright v. Parra*, 919 F.2d 31, 33 (5th Cir. 1990) (recognizing that immigration "policy questions [are]

With further administrative process available in the future, "the executive branch simply has not completed its review of [the sisters'] claims and consequently has not made a final decision regarding [their] . . . eligibility for asylum."[58] Even if the sisters elect not to relinquish TPS, there is little reason to believe that this additional process in removal proceedings will not eventually occur given the statutory requirement for periodic review of a country's TPS designation.[59] USCIS's denial letters thus do not consummate the Government's decisionmaking process as to the sisters' asylum eligibility.

B

We turn next to the second *Bennett* prong, which proves even more problematic for the sisters—and alternatively reveals the absence of finality. The sisters contend that the denial letters determined their legal rights, depriving them of the opportunity to obtain asylum's derivative benefits, such as a path to lawful permanent residence. Again, we disagree.

The denial letters did not alter the sisters' legal status. Both sisters remain in TPS, which protects them from removal and authorizes their continued lawful presence and ability to work in the United States.[60] The sisters view this as "an amorphous place holder." But keeping the "status quo [in place] for the time being"—even if for a prolonged period—is not a

―――――――――――――――――――

entrusted exclusively to the political branches of our government" such that there is "no judicial authority to substitute our political judgment for that of the Congress" (citation omitted)).

[58] *Dhakal*, 895 F.3d at 540 (footnote and citation omitted).

[59] 8 U.S.C. § 1254a(b)(3)(A) (mandating periodic TPS review to ensure that the conditions preventing safe return still exist); *see Duarte*, 27 F.4th at 1053 (discussing this statutory requirement).

[60] 8 U.S.C. § 1254a(a)(1)(A)–(B).

decision from which actual "legal consequences . . . flow."[61] That is because "the finality requirement is concerned with whether the initial decisionmaker has arrived at a definitive position on the issue that inflicts *an actual, concrete injury*."[62] There is no such injury here.

Nor do the denial letters bar the sisters from reasserting their asylum claims once TPS ends. Although the denial letters are nonappealable at this time, additional review will be available once the Government initiates removal proceedings. No doubt, the sisters would each obtain certain benefits if granted asylum, including certainty about their immigration status, a path toward lawful permanent residence and citizenship, and the ability for their family members to join them in the United States.[63] But those benefits are merely delayed—not definitely foreclosed—since TPS "freezes [their] position."[64] All the while, the sisters may lawfully remain in the United States and use the "additional time . . . to build a stronger asylum claim" (since an asylum officer found their previous attempts lacking) and "to develop any other potential avenues for immigration relief as defenses to removal."[65] Consequently, this interim deferral period carries no concrete legal effect: the sisters remain lawfully present and may reassert asylum at a later point.

---

[61] *See Dhakal*, 895 F.3d at 540 ("That is, its effect on [the alien] is to keep in place the status quo *for the time being*." (emphasis in original)); *see also Bennett*, 520 U.S. at 178 (citing *Port of Boston Marine Terminal Ass'n v. Rederiaktiebolaget Transatlantic*, 400 U.S. 62, 71 (1970)).

[62] *Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 193 (1985) (emphasis added).

[63] *Duarte*, 27 F.4th at 1053.

[64] *Id.*

[65] *Dhakal*, 895 F.3d at 540–41.

Cases decided after the Seventh Circuit's *Dhakal* decision do not bolster the sisters' arguments in favor of judicial review. Specifically, *Solorzano v. Mayorkas* [66] and *Sanchez v. Mayorkas* [67] addressed whether a TPS recipient is lawfully admitted for purposes of adjustment of status—"distinct concepts in immigration law."[68] But this distinction is irrelevant to the question before us and is not disputed by the Government. Neither case addressed asylum, administrative finality, or the availability of APA review. And neither case undermined the settled principle that TPS functions as a temporary shield that delays removal proceedings while simultaneously conferring lawful status.

The sisters' reliance on internal agency guidance fares no better. Invoking USCIS's Affirmative Asylum Procedures Manual, the sisters argue that a nonfinality determination in their circumstances contradicts the manual's language that "[a]n applicant [deemed ineligible for asylum] who is in [lawful] status receives a Final Denial letter without an accompanying [Notice to Appear]" in removal proceedings.[69] The sisters overread this language. Although the language references a "final" denial, it refers only to USCIS's final action at that stage of the process, not to the consummation of the entire administrative-review scheme. In any event, the USCIS manual is not law: it creates no rights, imposes no obligations, and cannot expand federal jurisdiction where Congress has not. At most, internal manuals are nonbinding guidance for agency personnel rather than a source of judicially

---

[66] 987 F.3d 392, 399 (5th Cir. 2021).

[67] 593 U.S. at 414–15.

[68] *Id.* at 415.

[69] USCIS, *Affirmative Asylum Procedures Manual*, at 213 (2016), https://www.uscis.gov/sites/default/files/document/guides/AAPM.pdf.

enforceable standards.[70] Whatever the USCIS manual says about the handling of asylum applications, it cannot override the APA's finality requirement or displace the statutory structure Congress enacted for asylum adjudication.[71]

Finally, the sisters argue that declining to treat the denial letters as final agency action encourages an alien to break the law by falling out of lawful status just to gain additional agency review. But this policy argument does not authorize us to ignore the comprehensive review scheme Congress created—even if that process is flawed or suboptimal.[72] In support of this contention, the sisters point to a concurrence in a different immigration case that advances a similar policy concern.[73] Notably, that concurrence expressly recognized that our precedent foreclosed this policy view,[74] and we reiterate the same today. Whether such policy concerns have merit may be an important conversation, but it is one that warrants legislative—not judicial—attention. If nothing else, concern about a problematic incentive certainly does not license us to revise prior circuit precedent.[75]

---

[70] *See Apter v. DHHS*, 80 F.4th 579, 590 (5th Cir. 2023) (recognizing that non-substantive agency rules not produced via the notice-and-comment process "lack the force of law" (quoting *Walmart Inc. v. DOJ*, 21 F.4th 300, 308 (5th Cir. 2021)).

[71] *See id.*

[72] *See Moosa*, 171 F.3d at 1009–10; *Parra*, 919 F.2d at 33.

[73] *See Elldakli*, 64 F.4th at 671–74 (HIGGINBOTHAM, J., concurring in the judgment).

[74] *Id.* at 671 (recognizing that our precedent is controlling but criticizing it as "a misstep").

[75] *See In re Bonvillian Marine Serv., Inc.*, 19 F.4th 787, 792 (5th Cir. 2021) ("It is a well-settled Fifth Circuit rule of orderliness that one panel of our court may not overturn another panel's decision, absent an intervening change in the law, such as by a statutory amendment, or by the Supreme Court, or our *en banc* court." (quoting *Jacobs v. Nat'l Drug Intel. Ctr.*, 548 F.3d 375, 378 (5th Cir. 2008)).

25-20073
c/w No. 25-20101

The review the sisters seek is deferred—not denied. That postponement underscores what is dispositive here: the denial letters do not concretely alter any legal rights or trigger legal consequences. Without those, there is no final agency action.

\*       \*       \*

Applying *Bennett*'s two-part test, we conclude that the denial letters are not final agency action. With respect to the first prong, the denial letters function as interim determinations that do not consummate the Government's decisionmaking on the sisters' asylum eligibility. The Government's ultimate decision on asylum will occur once the sisters have exhausted the administrative-review process by defensively raising asylum in removal proceedings. With respect to the second prong, the denial letters carry no independent legal effect and simply postpone final adjudication without concretely injuring the sisters. Accordingly, we AFFIRM the district courts' dismissals because the lack of finality is dispositive of the sisters' claims.

## III

Having determined that the denial letters are not final agency action, we next consider how this finality determination bears on the appropriate disposition. The district courts deployed two different procedural vehicles: dismissal for lack of jurisdiction under Rule 12(b)(1) in Maari's case and dismissal for failure to state a claim under Rule 12(b)(6) in Kewayfati's case. We conclude that dismissal for lack of jurisdiction is the proper disposition.

18

25-20073
c/w No. 25-20101

In our circuit, jurisdiction over APA claims depends on the presence of final agency action.[76] No final agency action exists here because the sisters did not let the administrative process run its course. Because "courts may not review the administrative decisions . . . unless the appellant has first exhausted 'all administrative remedies,'"[77] the district courts lacked jurisdiction to review the sisters' claims.[78]

To be sure, the line between jurisdictional and merits inquiries in APA cases can blur. It is for that reason that other circuits treat finality as bearing on the merits rather than jurisdiction.[79] But our circuit views the lack of final agency action as a jurisdictional defect that bars judicial review, making Rule 12(b)(1) the proper vehicle for dismissal.[80]

Importantly, jurisdictional dismissals must be *without* prejudice.[81] We have emphasized that "a jurisdictional dismissal must be *without* prejudice to

------

[76] *E.g.*, *Am. Airlines, Inc. v. Herman*, 176 F.3d 283, 287 (5th Cir. 1999); *Peoples Nat'l Bank v. Off. of Comptroller of Currency of U.S.*, 362 F.3d 333, 336 (5th Cir. 2004); *Elldakli*, 64 F.4th at 670.

[77] *Cardoso v. Reno*, 216 F.3d 512, 518 (5th Cir. 2000) (citing 8 U.S.C. § 1252(d)).

[78] *See id.*; *Elldakli*, 64 F.4th at 670–71.

[79] *See, e.g.*, *Dhakal*, 895 F.3d at 538–39 (concluding that lack of finality is not jurisdictional but instead is a required element that informs whether a party states a claim on the merits); *Jama v. DHS*, 760 F.3d 490, 494–95 (6th Cir. 2014) (same); *Trudeau v. FTC*, 456 F.3d 178, 184 (D.C. Cir. 2006) (same).

[80] *Elldakli*, 64 F.4th at 669–70; *Peoples Nat'l Bank*, 362 F.3d at 336; *Cardoso*, 216 F.3d at 518; *see also Petrenko-Gunter v. Upchurch*, No. 05-11249, 2006 WL 2852359, at *1 (5th Cir. Oct. 2, 2006) (per curiam) ("Because an individual denied an adjustment of status can renew that request for adjustment of status upon the commencement of removal proceedings, [the applicant] has not yet exhausted her administrative remedies.").

[81] *See Abdullah v. Paxton*, 65 F.4th 204, 208 n.3 (5th Cir. 2023) (per curiam) (recognizing that "dismissals based on jurisdictional issues must, by their very nature, be without prejudice" (quoting *Warnock v. Pecos Cnty.*, 88 F.3d 341, 343 (5th Cir. 1996)).

25-20073
c/w No. 25-20101

refiling in a forum of competent jurisdiction."[82] And we have further explained that a court without jurisdiction is "without authority to dismiss . . . claims with prejudice because a dismissal with prejudice is a final judgment on the merits of a case."[83] Accordingly, we AFFIRM both dismissals. Specifically, we AFFIRM in full the district court's dismissal without prejudice in Maari's case. However, the district court in Kewayfati's case dismissed with prejudice, so we AFFIRM the judgment insofar as it dismisses the action[84] but MODIFY that judgment[85] to a dismissal without prejudice, as is required when a court lacks jurisdiction.[86]

IV

Federal courts are not a fallback forum for disappointed applicants midstream in the administrative process. Nor does the APA license advisory opinions or premature refereeing of unfinished agency business. The APA authorizes judicial review only of *final* agency actions. That limitation is a

---

[82] *Carver v. Atwood*, 18 F.4th 494, 498 (5th Cir. 2021).

[83] *Campos v. United States*, 888 F.3d 724, 738 (5th Cir. 2018) (emphasis added) (cleaned up).

[84] "We may affirm on any ground supported by the record, including one not reached by the district court." *Hammervold v. Blank*, 3 F.4th 803, 813 (5th Cir. 2021) (citation omitted). This is especially true where there is a purely legal question like jurisdiction. *See Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 540–41 (1986) (reviewing a jurisdictional question not analyzed by the lower courts). A jurisdictional dismissal is also appropriate here because federal courts have a continuing obligation to evaluate their own jurisdiction as a threshold question. *See Elldakli*, 64 F.4th at 669 (citations omitted).

[85] Remand is unnecessary for this error. *See Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247, 254 (2010) ("Since nothing in the analysis of the court[] below turned on the mistake, a remand would only require a new . . . label for the same . . . conclusion.").

[86] *See Abdullah*, 65 F.4th at 208 n.3.

20

critical constitutional guardrail[87]—not a mere technicality—that prevents an end-run around the INA.[88]

The USCIS letters denying the sisters' affirmative-asylum applications did not mark the end of the road. While TPS remains in effect for the sisters, the administrative-review process is not complete because defensive asylum remains available in future removal proceedings. The agency also has not concretely altered the sisters' legal rights. They retain lawful status, and the pause on their removal proceedings due to TPS merely preserves the status quo. In other words, the USCIS denials at that preliminary juncture changed nothing for the sisters: no rights were fixed, no obligations were imposed, and no concrete legal consequences flowed. Without such consequences, no final agency action occurred to establish jurisdiction.

To be sure, the agency's denial of asylum to an alien *is* reviewable in federal court at *some* stage prior to removal. But that does not mean judicial review is available at *any* time or in *any* forum the applicant chooses. Only after the agency has made a final decision—after completion of removal proceedings before the IJ and following appeal to the BIA—does judicial review of an asylum denial become appropriate. Because the sisters have not

---

[87] *See Waleski v. Montgomery, McCracken, Walker & Rhoads, LLP*, 143 S. Ct. 2027, 2027–28 (2023) (mem.) (THOMAS, J., joined by GORSUCH and BARRETT, JJ., dissenting from the denial of certiorari) (recognizing that questions of statutory jurisdiction still implicate important separation-of-powers considerations (citing *Steel Co. v. Citizens for Better Environment*, 523 U.S. 83, 101, 118 (1998)).

[88] *Ardestani v. I.N.S.*, 502 U.S. 129, 133 (1991) ("Congress intended the provisions of the . . . INA . . . to supplant the APA in immigration proceedings."); *Dubey v. DHS*, 154 F.4th 534, 537 (7th Cir. 2025) ("An alien cannot use the APA to transfer review of an asylum determination to a district court, separating that issue from review of the [future] order of removal.").

25-20073
c/w No. 25-20101

gone as far as they could in obtaining administrative adjudication, there is no final agency action.

We therefore AFFIRM both dismissals but MODIFY the judgment in Kewayfati's case to a dismissal without prejudice for lack of subject-matter jurisdiction.